[No. 25586. *En Banc.* February 28, 1936.]

Don MacRae, *Appellant,* v. The Department of Labor and Industries, *Respondent.*[1]

*Kenneth Durham,* for appellant.

*The Attorney General* and *J. A. Kavaney, Assistant,* for respondent.

Tolman, J.—The appellant, a youth of nineteen years, is the son of H. F. MacRae, the president and managing officer of the MacRae Garage, Inc., a corporation, which was the employer. During the summer of 1933, the appellant began working at the garage after school each afternoon dispensing oil and gasoline, servicing, parking, delivering and picking up cars as the business required and, on occasions, going upon errands on a motorcycle which had been purchased by his father, but for which he was paying his father out of his earnings.

The appellant's hours were not regular, but depended upon the business of the garage. Some days he worked but an hour or so, and at other times when

[1]Reported in 54 P. (2d) 1017.

there was need of his services, he worked through the afternoon until six or seven o'clock. His pay was fixed at one dollar for each day whether he worked an hour or longer.

On the first day of May, 1934, the spring increase in business having begun, the boy resumed his employment at the garage under the same arrangement as had obtained during the preceding year, and he had worked twenty days before he was injured.

At the time of the injury, the boy had two motorcycles, one of which was not usable, but, as he expressed it, "it was out of commission." It was the custom for the boy to use his motorcycle to go to and from school and generally for his own pleasure and convenience. Also, after school each day he used his motorcycle to go to his work at the garage, and while at the garage and in the course of his employment there, he used it to perform errands for his employer as occasion might require. No doubt he also used the motorcycle to return to his home each day after his work was completed, but no one testified to that fact.

In addition to all of this, the father testified:

"Q. What if anything did he use the motorcycle at home for with respect to the work of the garage? A. It was always available in the afternoon and when he would be proceeding down there, the boys knew he could on his way down pick up parts for the shop if required in a hurry and sometimes they found they were out of something and they would phone the house and they would leave orders for him to pick something up on the way down."

The appellant himself likewise testified:

"Q. What, if anything, did you have to do in regard to getting parts at times on your way down? A. Once in a while. They would always phone me at the house before I would come down and have me pick something up, if they wanted something."

Coming now to the day of the accident, it appears without dispute that, on the day before (Sunday), the boy had slightly injured his knee while pumping his motorcycle, and he did not go to the garage to work at the usual hour on that day. (Whether he had been to school does not appear.) In any event, the boy remained at home in the afternoon, and the father returned home between five and six o'clock, found the boy to be better than he expected, and then told him to take a certain truck to the garage to be serviced. The testimony of both father and son substantiates the story to this point.

The father was asked on direct examination:

"Q. I will ask you whether or not the order to Don on the 28th to take the truck down to the garage and return was a special errand?"

No objection was interposed, and the father answered:

"A. It was a special errand. I told him to go down and bring the motorcycle home."

No similar question was propounded to the appellant, and he did not testify as to there being any special errand or that he was directed to bring the motorcycle home.

The accident happened and the injury was received by the appellant after the delivery of the truck to the garage by him, and while he was returning from the garage to his home between six and seven o'clock in the evening.

Upon this record, the joint board held that the appellant was not in the course of his employment at the time he was injured, and the trial court on the same record affirmed the ruling of the joint board.

It is true that the evidence was taken before an examiner and neither the joint board nor the trial court saw or heard these witnesses, but the evident conclu-

sions and deductions made by the joint board and the trial court are nevertheless entitled to some weight.

We have studied, reflected upon, and carefully weighed, all of this testimony, and are finally forced to the conclusion that, if there was a special direction by the employer through the father to the employee and the son to bring back the motorcycle on his return from delivering the truck, that special direction was not in furtherance of the business of the employer in any respect, but was entirely for the convenience and benefit of the boy in order that he might have the motorcycle at hand to use in going to school the next morning and for any other personal use which he might desire to make of it.

The testimony as to occasional telephone directions to perform some errand for the garage on his way from school to work rather clearly indicates that such directions were the exception and not the rule, and naturally, in any well organized and properly equipped garage business, the need of such directions would be rare indeed. Not only so, but there is no hint or suggestion in the testimony that anything of that kind was in the mind of the father when he directed his son to bring home his motorcycle; rather, it appears that the motorcycle was to be brought home for the personal use of the boy.

It seems to us that the appellant was but on his way home from work when he was injured, and we have never held that a workman on his way to or from his work is in the course of his employment. *Carter v. Department of Labor & Industries*, 183 Wash. 86, 48 P. (2d) 623; *Brown v. Department of Labor & Industries*, 135 Wash. 327, 237 Pac. 733.

In the latter case, Judge Bridges, speaking for the court, said:

"We think it can be safely said that ordinarily when an employee is injured while traveling the public road on his way to or from his place of work by conveyances not furnished by the employer, and he is not to be paid for the time consumed in going to and coming from his work, and at the time of his injury he is not on or in the immediate proximity of his employer's premises, the injury does not arise out of the employment, under the terms of our statutes."

The judgment is affirmed.

MITCHELL, STEINERT, GERAGHTY, and BEALS, JJ., concur.

MAIN, J. (dissenting)—The facts in this case, as I view them, are accurately stated in the majority opinion, but I am not in accord with the conclusion that is arrived at from those facts.

The appellant was sent on a special errand to take the truck to the garage, where it was to be serviced. Being on a special errand, he was in the course of his employment until he returned home.

In the case of *State v. Starr, ante* p. 18, 52 P. (2d) 897, it was said:

"Starr was returning from an errand upon which he had been sent by his employer, Casperson, and in so returning was in the course of his employment."

In the case of *Morris v. Department of Labor & Industries,* 179 Wash. 423, 38 P. (2d) 395, the injured workman was sent by his employer to obtain a contract from a prospective customer in another town, and on the return trip, after seeing the customer, was injured. Before starting on the return trip, he had attended a show in company with a young lady, and afterwards took her home. While returning to the place from which he started on the errand, he sustained an injury, and it was there held that he was in the

course of his employment while returning. In the course of the opinion, it was said:

"The fact that appellant attended the show in company with the young lady and the fact that he afterwards took her home, we regard as wholly immaterial. The accident occurred after appellant had resumed his homeward trip, and upon the very road that he would have taken had his return trip been made immediately after seeing the prospective customer. The particular mission upon which he had been directed contemplated a trip to White Center and return. Although the mission had been temporarily interrupted, it had not been completed at the time that the accident occurred. During the time of his actual return in completion of his mission, appellant was still in the course of his employment."

As I view it, the case now before us falls directly under the holdings in the two cases just cited. The fact that the appellant was returning on a motorcycle, after delivering the truck to the garage, is of no material consequence. Whatever his manner of transportation would have been, he was in the course of his employment until he returned to the place from which he started with the truck to deliver it to the garage.

Cases which hold that a workman injured on his way to or from his work is not in the course of his employment are not applicable to the present facts.

For the reasons indicated, I am unable to concur in the majority opinion, and therefore dissent.

MILLARD, C. J., HOLCOMB, and BLAKE, JJ., concur with MAIN, J.