[No. 26344. Department Two. February 9, 1937.]

BUCKLEY LOGGING COMPANY, *Respondent*, v. THE
DEPARTMENT OF LABOR AND INDUSTRIES,
*Appellant.*[1]

*The Attorney General* and *J. A. Kavaney,* for appellant.

*Charles W. Johnson,* for respondent.

TOLMAN, J.— One Paul Masserevich, a workman in the employ of the Buckley Logging Company, a corporation engaged in the business of logging, met his death on December 5, 1933. Thereafter, a hearing was had, and the supervisor of industrial insurance held that the workman died as the result of injuries received in the course of his employment.

As a result of that holding, the department, acting under the authority of Rem. Rev. Stat. (Supp.), § 7676, instead of charging to the "cost experience" of the employer the actual cost to the accident fund caused by the workman's death (which, he being a single man

[1]Reported in 64 P. (2d) 1049.

with no dependents, was the amount of the funeral expenses only), charged the employer's "cost experience" with the fixed sum of four thousand dollars.

The employer, being dissatisfied, appealed to the joint board, which sustained the order of the supervisor, and thereafter an appeal was taken to the superior court for Pierce county, which court, after a hearing, among other things, found:

"That the body of Paul Masserevich was found on December 6, 1933, in the morning, at which time he had been dead about 24 hours; that his death was not accidental but was caused by an occlusion of the left coronary artery, with an acute gangrenous appendix as a contributing cause;

"That at the time of the death of Paul Masserevich he was off duty, that he was not under the direction or control of the Buckley Logging Co. at that time, that he was not receiving any wages for that day, that his time was his own, and that, exercising his freedom of choice, he voluntarily placed himself in a dangerous locality and when he died he was not furthering the interests of his employer in any manner, and was not in the course of his employment."

A judgment followed reversing the order of the joint board and of the supervisor. The department has appealed to this court from that judgment.

It seems apparent that, if either of the findings above quoted is sustained, the judgment must be affirmed, and therefore we have here only questions of fact.

The deceased, with others of the crew of which he was a member, was taken to his place of work on the morning of the day in question in the customary way, by a speeder operated by the employer. On arrival, the men determined that, because of the high wind then prevailing, it would be unsafe to work in the woods, and, no speeder being available at that hour to return them to camp, they started to return on foot.

By a short cut, they had but one mile to walk. By following the railroad, it was something less than three miles to camp. Some of the men went by one way and some by another, but apparently most, if not all, except only the deceased, kept well out of the standing timber. The deceased waited for a time, and no one seems to have known at just what time he started or just what course he followed, except that, having failed to return to camp, a search was made the next day, and the body found under a fallen tree in the woods; how near to the usual short cut does not very clearly appear. A witness described the finding of the body in these words:

"We spread out and went down through the woods and I believe we took about the same course that he did and I come down to this tree that killed him and walked out on it to where it broke—the chunk broke he was laying on—and I stood on the end of it and looked around for a little while, then I saw all the trees there and so I thought it was no use looking there any more, I didn't figure he would really come down through there the way the wind was blowing it was a dangerous place to go through. I don't believe there was any one else in the crew went through there because it was really a dangerous place, a lot of trees standing there—then I turned around and went back the tree to the butt, and just then Chet Johnson found him and went up to him and hollered that he had found him, and the tree was on him—on the small of his back, and one leg doubled up this way."

Another witness says:

"Q. Did you take a course anywhere near where Mr. Masser got killed? A. Yes, right alongside of it. I went down the trail. He cut off the trail and went through the conkey trees. Q. He left the trail entirely? A. Yes."

As to the finding that death resulted from natural causes, the evidence is conflicting and not wholly satis-

factory. Perhaps, under our rule, we would not be justified in saying that the evidence preponderates against this finding, but we pass this question without decision because the evidence all sustains the finding that the deceased was not within the course of his employment at any time after he started on his return to camp.

 It seems self-evident from the brief narration of the course of events which we have made that the deceased, when it was determined that work should not proceed, had three choices, namely: He might remain where he was in a place of safety until the speeder was available to return him to camp; he might walk by way of the railroad or any other course which would keep him out of the standing timber and away from the possibilities of being struck by falling trees; or he might, as he apparently did, disregard the known dangers and stroll through the standing timber, using little or no care for his own safety. His time was his own, he had full freedom of choice, and his situation was no different from that of any workman who may leave the factory gate at the close of the day to choose his own way and his own means of reaching his home.

The judgment appealed from is affirmed.

STEINERT, C. J., HOLCOMB, BLAKE, and ROBINSON, JJ., concur.