[No. 25768-4-I.   Division One.   February 10, 1992.]

LAUREL J. BELNAP, *Appellant*, v. THE BOEING COMPANY, *Respondent*.

*William C. Decker,* for appellant.

*Michael L. Hall* and *Perkins Coie,* for respondent.

KENNEDY, J. — Appellant Laurel Belnap, widow of Woodruff Belnap, seeks widow's pension benefits under the Industrial Insurance Act following the death of her husband as the result of an automobile accident on October 24, 1985. In February 1986, the Department of Labor and Industries rejected the claim, finding that Mr. Belnap was not in the course of his employment with The Boeing Company at the time of the fatal accident. Mrs. Belnap appealed the Department's order to the Board of Industrial Insurance Appeals. In January 1987, the board issued a proposed decision and order sustaining the order of the Department. Following this, Mrs. Belnap appealed to the King County Superior Court. On February 7, 1990, the Superior Court affirmed the denial of widow's pension benefits, finding that the decedent was not acting in the course of his employment with The Boeing Company at the time of his fatal acci-

dent. Mrs. Belnap then filed a timely appeal with this court. We affirm.

## FACTS

The facts are stipulated. Woodruff Belnap (Belnap) began working for The Boeing Company (Boeing) in 1952. From 1975 to the date of his death in October 1985, Belnap worked as a hybrid computer systems specialist at Boeing's aerospace center in Kent, Washington. He was a nonunion, salaried employee.

Belnap, who resided at Buckley in Pierce County, was summoned by the Pierce County Superior Court for jury duty to be served from October 2, 1985, through October 31, 1985.

Boeing had adopted a written corporate policy allowing time off with pay for employees who are summoned to jury duty, contingent upon the employee providing documented verification of actual hours of jury service for the days the employee is absent from work.[1] The stated purpose for Boeing's policy is "to assure that an employee does not incur excessive financial loss from performing [jury duty]."

Boeing also provided an instruction sheet to employees with respect to their duty to report for work prior to or following jury service on any given day. Belnap had been given a copy of the instruction sheet after being summoned to jury duty. This instruction sheet stated in relevant part:

> Employees are allowed two hours travel/preparation time prior to reporting and after being released from court before being required to report to work. When two hours of your regularly scheduled shift are available following or prior to the two hours travel/preparation time, *you must report to work*.

On October 24, 1985, Belnap traveled directly from his home to the Pierce County Courthouse where he reported for jury duty at 9 a.m. At 12 noon, the court excused Belnap from jury duty for the remainder of the day. Upon being

---

[1]Belnap submitted the proper documentation of his entitlement to time off with pay, from the commencement of his jury service to the day of his death.

excused, Belnap drove to Kent, intending to report for work and to complete the remainder of his shift.

Belnap's regular shift was from 6:30 a.m. to 3 p.m. The parties have stipulated that Belnap "was attempting to report to work in compliance with the instruction sheet" referred to above. Clearly, however, by the actual terms of the instruction sheet, Belnap was not *required* by Boeing to report for the remainder of his shift. This is because 2 hours of his regularly scheduled shift were not "available", once Belnap's allowance of 2 hours travel/preparation time were taken into account. Although it is clear from the record that, but for the fatal automobile accident, Belnap easily could have gotten to work by 1 p.m., so as to have 2 hours of his regular shift remaining, it is equally clear from the record that Boeing's *"you must report to work"* instruction did not apply to Belnap. The instruction sheet included several examples which illustrated that a hypothetical employee whose regular shift was virtually identical to Belnap's would not be required to report to work prior to reporting for jury duty at 9 a.m. or after being released from jury duty at 12 noon. Whether Belnap misunderstood these instructions, or whether he was attempting to report to work in compliance with the *spirit*, rather than the letter, of the instructions is not a subject covered by the stipulated facts.

Just before arriving at the Kent jobsite, Belnap stopped for personal reasons (apparently to purchase gasoline) at a Mobil service station catercorner from Boeing's Kent facility. Upon exiting the service station and proceeding onto the public street, at 12:55 p.m., Belnap's 1980 Volkswagen Rabbit crossed the path of an oncoming vehicle, which struck Belnap's vehicle broadside. Belnap was pronounced dead from his resulting injuries, at Valley Medical Center in Renton, at 1:50 p.m. the same day.

The fatal car crash did not occur on the jobsite where Belnap was employed, nor at any other premises occupied,

used or contracted for by Boeing. Between the date his jury service commenced through the day of his death, Belnap was paid his full salary by Boeing. His payroll records reflect that his salary included leave with pay for jury service through Belnap's full shift on October 24, 1985, the day of his death.

## DISPOSITIVE ISSUES

The dispositive issue on appeal is whether Belnap was acting in the course of his employment with Boeing within the meaning of RCW 51.08.013[2] while serving as a juror or during his journey from the Pierce County Courthouse toward the Kent jobsite, on the day of his death.

## DISCUSSION

A. *Standard of Review.*

■■ "Under [RCW 51.52.115],[3] the findings and decisions of the Board [of Industrial Insurance Appeals] are

---

[2]RCW 51.08.013 provides as follows:

" 'Acting in the course of employment' means the worker acting at his or her employer's direction or in the furtherance of his or her employer's business which shall include time spent going to and from work on the jobsite, as defined in RCW 51.32.015 and 51.36.040, insofar as such time is immediate to the actual time that the worker is engaged in the work process in areas controlled by his or her employer, except parking areas, and it is not necessary that at the time an injury is sustained by a worker he or she be doing the work on which *his or her compensation is based or that the event be within the time limits on which* industrial insurance or medical aid premiums or assessments are paid. The term shall not include time spent going to or coming from the employer's place of business in commuter ride sharing, as defined in RCW 46.74.010(1), notwithstanding any participation by the employer in the ride-sharing arrangement."

[3]RCW 51.52.115 provides:

"Upon appeals to the superior court only such issues of law or fact may be raised as were properly included in the notice of appeal to the board, or in the complete record of the proceedings before the board. The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court as provided in RCW 51.52.110: *Provided,* That in cases of alleged irregularities in procedure before the board, not shown in said record, testimony thereon may be taken in the superior court. The proceedings in every such appeal shall be informal and summary, but full opportunity to be heard shall be had before judgment is pronounced. In all court

prima facie correct and the burden of proof is on the party attacking them." *Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 146, 736 P.2d 265 (1987). The claimant must establish by a preponderance of the evidence that the findings of the board are incorrect. 108 Wn.2d at 146; *see also Lang v. Department of Labor & Indus.*, 35 Wn. App. 259, 263, 665 P.2d 1386 (1983). An appellate court reviewing the superior court's decision will affirm if the court's findings are supported by substantial evidence. *Ravsten*, 108 Wn.2d at 146. For reasons we will discuss, we conclude that substantial evidence supports the Superior Court's finding that at the time of his fatal accident Belnap was not acting in the course of his employment with Boeing. We also conclude that the board and the Superior Court correctly construed the law in determining that Belnap was not acting in the course of his employment with Boeing at the time of his fatal accident. *See* RCW 51.52.115 ("If the court shall determine that the board has . . . correctly construed the law and found the facts, the decision of the board shall be confirmed; . . .").

## B. *Belnap Was Not Acting in the Course of His Employment With Boeing While Serving on Jury Duty.*

In challenging the Superior Court's decision, appellant argues that Belnap was at all times acting in the course of his employment with Boeing while serving as a juror. Appellant contends that by paying Belnap his regular

---

proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same. If the court shall determine that the board has acted within its power and has correctly construed the law and found the facts, the decision of the board shall be confirmed; otherwise, it shall be reversed or modified. In case of a modification or reversal the superior court shall refer the same to the department with an order directing it to proceed in accordance with the findings of the court: *Provided,* That any award shall be in accordance with the schedule of compensation set forth in this title. In appeals to the superior court hereunder, either party shall be entitled to a trial by jury upon demand, and the jury's verdict shall have the same force and effect as in actions at law. Where the court submits a case to the jury, the court shall by instruction advise the jury of the exact findings of the board on each material issue before the court."

salary while Belnap served as a juror, Boeing was further-ing its own corporate policy of encouraging its employees to be responsible citizens. By so doing, appellant contends, Boeing fosters goodwill in the community and thereby enhances its corporate image in the community at large.

We do not doubt that Boeing enhances its corporate image in the community at large by granting time off with pay to its employees who are summoned for jury duty. Boeing's corporate image among its employees, who thereby are enabled to perform jury duty without financial hard-ship, is likewise well served by the policy. But that Belnap was paid his full salary while serving as a juror and that Boeing's corporate image was thereby enhanced does not automatically lead to the conclusion that Belnap was acting in the course of his employment with Boeing while fulfilling his own obligations of citizenship.

We are persuaded by the reasoning, as to this issue, of the court in *Silagy v. State*, 101 N.J. Super. 455, 244 A.2d 542 (1968), *aff'd*, 105 N.J. Super. 507, 253 A.2d 478 (1969). There, it was held that Silagy, an employee of the New Jersey Department of Labor and Industry, was not an employee of her regular employer while serving as a juror, although her regular employer paid her full wages while she served as a juror. Under New Jersey workers' compen-sation statutes, in order for there to be compensation for a worker's injury, "the injury must be work-related; it must have arisen out of and in the course of [the worker's] employment". (Citation omitted.) *Silagy*, at 459. Silagy tripped and fell while leaving the courthouse after being excused as a juror and while en route to her regular place of employment.

In response to Silagy's argument that her service as a juror was in the course of her regular employment because her employer paid her full wages and because by serving as a juror she was conferring a benefit to her employer (the State of New Jersey), the court said:

> Payment of wages may be one of the elements of proof in determining whether the relationship of employer-employee

exists at a particular moment, but it is not a controlling factor. The court will also consider the factors of hiring, control and power of dismissal, with control being the single most important factor. Control is defined as supervisory power not only over what shall be done — the desired end result, but also over how it shall be done — the means of accomplishing that end result. . . .

In the present case, the State [Silagy's regular employer] neither controls *what* shall be done while [Silagy] is on jury duty nor *how* her duties are to be performed. As the usual employer, the State cannot and does not control the hiring of the juror, the discharge of the juror, the final vote of the juror, the place where she is to vote, the hours she is to serve, nor the compensation to be paid for her service. In short, the State does not exercise, to any significant degree, such control over [Silagy] while she is serving as a juror as would determine the existence of an employer-employee relationship.

. . . .
. . . While [Silagy] was serving as a juror . . . continued payment of wages was a matter of policy with her usual employer. . . . Fortunately, many employers . . . realize the important civic duty being rendered the community and in their wisdom choose to compensate employees selected for jury duty, to help alleviate what would otherwise be a tremendous financial hardship to many jurors.

. . . .
. . . The [regular employer] should not be held responsible for injuries sustained while [the employee] was performing a public duty for the good of the community at large. Certainly, it can be said that her employer received an incidental benefit, but so also was it a salutary gain for the judicial system . . . and for the . . . community . . .. Any incidental benefit . . . was not such as to be limited . . . alone [to] her usual employer.

(Citations omitted.) *Silagy*, at 459-63.

Appellant argues that Belnap's case is different from *Silagy* because Boeing never relinquished full control of its employees during jury duty — Boeing maintained a certain degree of control by instructing Belnap when he was or was not required to return to work, following his release from jury duty. We disagree that this is different from *Silagy*. There, the employee was also expected to return to work when not needed as a juror. 101 N.J. Super. at 458. As aptly pointed out by Boeing, although the instruction sheet required employees to report to work under some circumstances (when 4 hours of the regular shift remained upon

the employee's release from jury duty — 2 hours for travel/ preparation time plus 2 hours of the regular shift), even if Boeing *had required* Belnap to report to work on the day of his death, in a very real sense, unless excused, employees are directed and required to report to work *every* working day. That reality does not convert ordinary commuting into an exception to the general "going and coming" rule.[4]

■ We hold that Belnap was not acting in the course of his employment with Boeing while on jury duty, notwithstanding that Boeing paid Belnap's full salary while he served as a juror; notwithstanding that Boeing's corporate image, and thus its general business interests, may incidentally have been enhanced as a result of its leave with pay policy; and notwithstanding that Boeing issued instructions to its employees as to when they were and were not required to report to work, depending upon the time they might be released from jury duty by the court on any given day.[5]

This is an issue of first impression in Washington. Although *Silagy* is certainly not controlling, we are persuaded by its reasoning: as Belnap's usual employer, Boeing exercised no control over Belnap's service as a juror. Service as a juror was not part of Belnap's job description. Under RCW 51.08.013, a worker is in the course of his employment if he is acting at the direction of his employer or in furtherance of his employer's business. Boeing did not direct its employees that they must serve as jurors, if summoned. Nor is Boeing in the business of administering justice, by way of jury trials or otherwise. *See Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wn.2d 550, 553, 588 P.2d 1174 (1979) (an employment relationship exists for the purposes of the Industrial Insurance Act if the employer has

---

[4]The "going and coming" rule is discussed later in this opinion.

[5]We deem it immaterial to any issue in this appeal that Belnap was not actually required to report to work after being released from jury duty. Our ruling would be the same even if Belnap had been released from jury service earlier in the day and thus required to report for work by the terms of the written instruction. See discussion, *infra*.

the right to control the employee's physical conduct in the performance of his or her duties and if there is consent by the employee to this relationship).

C. *Belnap Was Not Acting in the Course of His Employment With Boeing During His Journey From the Pierce County Courthouse to the Boeing Jobsite.*

RCW 51.08.013 provides that a worker is acting within the course of his employment during time spent "going to and from work *on the jobsite,* as defined in RCW 51.32.015 and 51.36.040, insofar as such time is immediate to the actual time that the worker is engaged in the work process in areas controlled by his or her employer . . .." (Italics ours.)

RCW 51.32.015 and 51.36.040 define "the jobsite", insofar as is relevant to this opinion, as

the premises . . . occupied, used or contracted for by the employer for the business or work process in which the employer is then engaged [unless the] worker by reason of his or her employment leaves such jobsite under the direction, control or request of the employer . . ..

Here, the parties have stipulated that Belnap's fatal accident did not occur on premises occupied, used or contracted for by Boeing. At issue, however, is whether Belnap had left (or was returning to) the jobsite under the direction, control or request of Boeing.

Contrary to the arguments of appellant, we conclude that Belnap, who was not acting in the course of his employment with Boeing while serving as a juror, had not left the jobsite by reason of his employment or under the direction or control of his employer. Nor was Belnap returning to the jobsite under Boeing's direction, control or request within the meaning of RCW 51.08.013, 51.32.015 and 51.36.040. Rather, Belnap was commuting to work within the meaning of the "going and coming" rule.

The "going and coming" rule, subject to certain recognized exceptions, denies industrial insurance coverage to workers who are injured while commuting to and from work. While admittedly the worker's journey to and from work is because

of the employment, historically the courts have taken it for granted that industrial insurance was not intended to protect workers against all the perils of that journey. 1 A. Larson, *Workmen's Compensation* § 15.11, at 4-4 (1990); *see also In re Hamilton*, 77 Wn.2d 355, 359-62, 462 P.2d 917 (1969) (with certain express modifications, the Washington Legislature has enacted that which is now generally accepted as the going and coming rule).

The rule excluding off-premises injuries during the journey to and from work does not apply if the making of the journey, or the special degree of urgency under which it is made, is in and of itself a substantial part of the service for which the worker is employed. 1 A. Larson § 16.00, at 4-196. This principal, that is, that the journey is an inherent part of the service, explains the recognized exceptions to the going and coming rule. 1 A. Larson § 16.04, at 4-203 to 4-204.

■ One such recognized exception is the "special errand" rule, which provides:

> When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

(Footnotes omitted.) 1 A. Larson § 16.11, at 4-204.

The special errand exception should be distinguished from situations involving a simple mission off the premises to do some job for the employer. Although such missions are sometimes referred to in case law as "special errands", they clearly are in the course of a worker's employment in their own right. 1 A. Larson, at 4-204 n.8. *See also* RCW 51.32-.015; 51.36.040 (coverage is provided for workers who, by reason of employment, leave the jobsite under the direction, control or request of the employer).

Here, appellant argues that Belnap's journey from the Pierce County Courthouse to Boeing's jobsite in Kent falls

within the "special errand" exception because Belnap was attempting to comply with Boeing's strongly worded instruction that a worker must report to work after being released from jury duty if there are 2 hours of the worker's shift remaining. Because Belnap did not need the full allowance of 2 hours' travel/preparation time in order to travel from Tacoma to Kent, but only 1 of those hours, appellant argues that Belnap was in fact *required* to report to work by the terms of the written instruction. We disagree, but as stated earlier in this opinion, even if the instruction sheet were interpreted to require Belnap to report to work, or even if he had been released from jury service earlier in the day, so as clearly to be subject to the "*you must report to work*" instruction, his journey nevertheless fell within the going and coming rule.

Although it is not entirely clear to this court whether appellant is relying upon the historical "special errand" exception or upon what would more accurately be described as a trip "by reason of . . . employment . . . under the direction, control or request of the employer", in either event we must reject the argument on its merits.[6]

In terms of the historical "special errand" exception, what is missing here is the underlying principle which explains the exception: Belnap's journey from the Pierce County Courthouse to Kent was no more inherently a part of his service to Boeing than would be an ordinary commute from his home in Buckley. *See* 1 A. Larson § 16.04.

The out-of-state cases upon which appellant relies do not persuade us otherwise, in that they involve facts upon which the applicable fact-finding bodies indeed could deter-

---

[6]Boeing argues that the argument should not be considered because it is raised for the first time on appeal and therefore the argument is waived pursuant to RCW 51.52.104. We elect to address the argument, nevertheless, pursuant to the inherent power of appellate courts to address issues which are crucial to the case and necessary to a proper decision. *See Falk v. Keene Corp.*, 113 Wn.2d 645, 659, 782 P.2d 974 (1989). The issue has been fully briefed by both parties and the facts necessary to resolve the issue are included in the record. *Cf.* RAP 12.1(b); *see also Alverado v. WPPSS*, 111 Wn.2d 424, 430, 759 P.2d 427 (1988), *cert. denied*, 490 U.S. 1004 (1989).

mine, on substantial evidence, that the journeys involved were inherently a part of the employees' service to their employers. Those cases are thus factually distinguishable. In *Dynalectron Corp. v. Industrial Comm'n*, 660 P.2d 915 (Colo. Ct. App. 1982), there was a strongly implied order to the employee from the employer to attend an off-premises business meeting. In *Binet v. Ocean Gate Bd. of Educ.*, 90 N.J. Super. 571, 218 A.2d 869 (1966), a school principal's attendance at a PTA meeting in the evening was not compulsory but was considered by the employer to be desirable. In both instances, the meetings served the business purposes of the employers and thus were inherently a part of the service to the employers.

Here, the off-premises journey is more akin to, although certainly not on all fours with, the journey in *Lang v. Department of Labor & Indus.*, 35 Wn. App. 259, 665 P.2d 1386 (1983). In *Lang*, the employee was a part-time soccer coach who was required to attend afterschool soccer games. On the day of his injury, Lang arrived at the school to prepare for a scheduled game. The game was rained out, however, and Lang was told by his supervisor that he either could go home early or he could stay to counsel his students. Lang chose to remain at school to counsel his students. On his way home, some 45 minutes after he had been told he could leave early, Lang was hurt in an automobile accident. He argued that his claim for benefits fell under the special errand exception, because by remaining at work later than required he had conferred a special benefit upon his employer. The court was not so persuaded, in that the additional service did nothing to enhance the relative importance to his employer of Lang's journey home from work. *Lang*, at 262-63.

Similarly, here, Belnap, perhaps by reason of lack of understanding of the letter of Boeing's written instruction, or perhaps by reason of a desire to abide by the spirit of the written instruction, was attempting to report to work to complete his remaining shift; but there is nothing in the stipulated facts to indicate that the journey, had it been

completed, was of relatively more importance to Boeing than any other daily commute.

We hold that the "going and coming" rule, rather than its "special errand" exception, is the applicable rule in this case. Accordingly, Belnap was not acting in the course of his employment with Boeing during his journey from Tacoma to Kent.

D. *That Belnap Was Being Paid His Regular Salary While on Jury Duty Did Not Bring His Journey Under the Reimbursed Travel Exception to the Going and Coming Rule.*

■ Although appellant argues otherwise, we also find no evidence in the record that Belnap was being reimbursed by Boeing for his travel within the meaning of that particular exception to the going and coming rule. That Belnap was on leave with his regular pay does not bring the case within the reimbursed travel exception to the going and coming rule. Appellant's reliance on *Westinghouse Elec. Corp. v. Department of Labor & Indus.*, 25 Wn. App. 103, 604 P.2d 1334, *aff'd*, 94 Wn.2d 875, 621 P.2d 147 (1980) is misplaced. In *Westinghouse* the employers had contractually agreed to pay travel costs in lieu of actually providing employees with transportation to their remote jobsites. The court determined that there was substantial evidence to support the trial courts' findings that these contractual obligations were not "merely a fringe benefit" to the employees. Rather, they were negotiated contractual provisions intended for the mutual benefit of the employer and the employee. That mutual benefit brought the reimbursed travel within the course of employment. *Westinghouse*, 94 Wn.2d at 880-81.

By way of contrast, there is no evidence in the record for this appeal that Boeing's leave with pay policy for employees serving jury duty was intended for the mutual benefit of Boeing and its employees. Rather, there is substantial evidence that the leave with pay policy provides a "fringe benefit" to employees, so that they may perform a civic duty without experiencing undue financial hardship.

Any incidental benefit to Boeing, in the form of enhancement of its corporate image, was a benefit which was shared by Belnap, by the judicial system and by the community at large, in terms of enabling Belnap to perform a civic duty without suffering undue financial hardship. The incidental benefit was not to Boeing alone and had little if any direct relationship to Boeing's primary business purposes. *See Silagy*, at 463.

Nor do the cases of *Burchfield v. Department of Labor & Indus.*, 165 Wash. 106, 4 P.2d 858 (1931) or *Flavorland Indus., Inc. v. Schumacker*, 32 Wn. App. 428, 647 P.2d 1062 (1982) support appellant's claim that Boeing's leave with pay policy brings Belnap under the reimbursed travel exception to the going and coming rule. In *Burchfield*, the injured worker was on a special mission, at the express instruction of his employer, to transfer from one of the employer's jobsites to another of the employer's jobsites and it was as much a duty of the employee to move from jobsite to jobsite as it was to perform his work at each jobsite. The court expressly stated that the fact that Burchfield was paid $1.40 (an amount equal to bus fare had he chosen to ride the bus rather than to use his own vehicle, and an amount which was payable whether the employee rode the bus or drove his own vehicle), rather than wages, as compensation for the journey, was totally immaterial to the decision. *Burchfield*, at 110. Here, Belnap had performed no services for Boeing at the Pierce County Courthouse, which courthouse was not a Boeing jobsite. Further, it was not a part of Belnap's regular duty for Boeing to move from jobsite to jobsite, as was the case with the employee in *Burchfield*. That Belnap was on leave with pay does not lead to the conclusion that he was within the scope of his employment. *Burchfield*, at 110; *see also Silagy*, at 458-59.

In *Flavorland*, the employer expected its employee Schumacker to attend Thursday night gatherings where he would buy drinks for himself and others as part of his public relations duties. The employer paid for Schumacker's drinks and for the drinks he purchased for others. The

employer also furnished Schumacker with a company car. Following one such Thursday night gathering, Schumacker, who had become intoxicated, drove the company car off the road, and he was killed. The court upheld a jury verdict that Schumacker's journey homeward that night was in the course of his employment. Not only did Flavorland furnish Schumacker with a company car, both for business and commuting purposes, but the employer also condoned and encouraged the drinking parties, even though the employer knew that Schumacker sometimes drank to excess. The facts of *Flavorland* are simply inapposite. Here, Boeing neither furnished Belnap with a company car nor was jury service a part of Belnap's position with Boeing as entertaining was a part of Schumacker's position with Flavorland.

## CONCLUSION

There being substantial evidence in support of the Superior Court's finding that Belnap was not acting in the course of his employment with Boeing at the time of his fatal injury, and the court having correctly construed the applicable law, we affirm the denial of widow's pension benefits as against Boeing.

GROSSE, C.J., and AGID, J., concur.