121 P.3d 747 (2005)
129 Wash.App. 687
COCHRAN ELECTRIC COMPANY, a Washington corporation, Appellant,
v.
Neil R. MAHONEY, deceased, through his beneficiary Susan A. Mahoney; and Washington State Department of Labor and Industries, Respondents.
No. 55126-4-I.
Court of Appeals of Washington, Division 1.
September 16, 2005.
*749 Christina G. Nelson, Paul R. Cressman, Short Cressman & Burgess, Seattle, WA, for Appellant.
William D. Hochberg, Grady B. Martin, Law Office of William D. Hochberg, Edmonds, WA, Andrew J. Simons, Office of the Attorney General, Seattle, WA, for Respondents.
COX, C.J.
¶ 1 When a worker engages in a special activity that is within the course of employment, and the activity is reasonably undertaken at the request or invitation of the employer, an injury of the worker while traveling to or from the place of the special activity is within the course of employment for purposes of workers compensation.[1]
¶ 2 Here, Neil Mahoney drove his employer's service van to a garage for regular maintenance. He departed for his home from the garage by bicycle after dropping off the van, and was struck by a car. Mahoney later died of injuries suffered during the accident. Because the injury occurred while Mahoney was on a special errand for his employer, Cochran Electric Co., Inc. (Cochran), his death is compensable under Washington's Industrial Insurance Act (IIA). We affirm.
¶ 3 Mahoney worked as a service electrician for Cochran providing service as needed on a variable schedule. Cochran provided Mahoney with a service van to drive to and from scheduled job sites.
¶ 4 On the day of his accident, Mahoney was not scheduled to work. But he drove the service van to the Cochran offices to submit paperwork. He then dropped the van off at a local garage for servicing. Mahoney brought his bicycle in the van for the trip home. On the way home an automobile struck him. He suffered severe injuries from which he subsequently died.
¶ 5 Susan Mahoney, Neil Mahoney's widow and beneficiary, submitted a claim to the Washington State Department of Labor and Industries (L & I) for survivor benefits under the IIA. L & I determined that Mahoney's death was not caused by an industrial accident because, at the time of the injury, Mahoney was not in the course of employment. L & I denied Susan Mahoney's request for reconsideration, and she appealed to the Board of Industrial Insurance Appeals (BIIA).
¶ 6 The BIIA reversed. Cochran petitioned for reconsideration, which the BIIA denied. Cochran then appealed the BIIA's order to King County Superior Court.
¶ 7 Susan Mahoney moved for summary judgment on the issue of whether Neil Mahoney was acting within the course of his employment under the IIA when he was injured. The trial court granted her motion, affirming both the BIIA's Order and Decision.
¶ 8 Cochran appeals.

ACTING IN THE COURSE OF EMPLOYMENT
¶ 9 Cochran argues that the superior court erred in finding that Mahoney was in the course of employment when he was fatally injured in an accident returning home from dropping off his employer-provided van at a garage for maintenance. Specifically, Cochran argues that the court erred in affirming *750 the BIIA's determination that Mahoney was acting at the direction of his employer and in the furtherance of his employer's business at the time he was injured. We hold that Mahoney was acting within the course of employment at the time of his injury.
¶ 10 When reviewing an order of summary judgment, this court engages in the same inquiry as the trial court.[2] This court conducts de novo review to determine if the record before the superior court, with all facts and inferences considered in the light most favorable to Cochran, the non-moving party, demonstrates that there is no genuine issue of material fact, and that Susan Mahoney is entitled to judgment as a matter of law.[3] The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion.[4]
¶ 11 Under RCW 51.52.115, the findings and decision of the BIIA are prima facie correct. Cochran, the party challenging the Board's determination, has the burden of establishing by a preponderance of the evidence that the findings of the Board are incorrect.[5] An appellate court reviewing the superior court's decision will affirm if the court's findings are supported by substantial evidence.[6]
¶ 12 "[T]he guiding principle in construing the Industrial Insurance Act is that the Act is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker."[7] In order to be eligible for compensation, the statute requires that the injury occurred while the worker was within the "course of employment."[8]
¶ 13 The IIA defines "acting in the course of employment" as:
the worker acting at his or her employer's direction or in the furtherance of his or her employer's business which shall include time spent going to and from work on the jobsite ... [and][i]t is not necessary that at the time an injury is sustained by a worker he or she is doing the work on which his or her compensation is based....[9]
¶ 14 The court considers whether "the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest."[10]

SPECIAL ERRAND EXCEPTION
¶ 15 Cochran argues that if Mahoney had been traveling to work when injured, his claim would be precluded by the "going and coming" rule. It argues that the court erred in affirming the BIIA's determination that Mahoney was on a "special errand" for his employer when injured, which included the trip home on his bicycle.
¶ 16 The rule excluding off-premises injuries during the journey to and from work does not apply if the making of the journey, or the special degree of urgency under which it is made, is in and of itself a substantial part of the service for which the *751 worker is employed.[11] This principle, that is, that the journey is an inherent part of the service, explains the recognized exceptions to the "going and coming" rule.[12] Thus, one such recognized exception is the "special errand" rule, which provides:
When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.[13]
¶ 17 In Dimmig v. Workmen's Compensation Appeals Board, the California Supreme Court held that an employee killed while returning home from night classes at a local college was in the course and scope of his employment, under the special errand exception.[14] In that case, the employee reasonably believed that pursuit of a degree was required by his employer, who encouraged and financially supported continuing employee education.[15] The court concluded that attending classes was in the furtherance of his employer's interest.
¶ 18 Moreover, in concluding that the employee's return trip from class fell within the special errand exception to the `going and coming' rule, the court noted that:
"compensation is not barred by the going and coming rule when the employee is requested to perform an unusual service, or a usual service at an odd hour, because the trip is special in that the bother and effort of the trip itself is an important part of what the employee is eventually compensated for."[16]
¶ 19 Here, taking the van for servicing, leaving it, and returning home were all part of a special errand for Cochran's benefit. The trouble and time of making the journey was sufficient to bring the entire trip within the course of employment.
¶ 20 Similarly, in Morris v. Dept of Labor and Indus.,[17] the injured workman was sent by his employer to obtain a contract from a prospective customer in another town, and was injured on the return trip, after seeing the customer.[18] Before beginning the return trip he picked up a friend, with whom he attended a show, and afterward took her home. The court held that his recreational deviation was immaterial.[19] "Although the mission had been temporarily interrupted, it had not been completed at the time that the accident occurred. During the time of his actual return in completion of his mission, appellant was still in the course of his employment."[20]
¶ 21 We conclude that the BIIA and the trial court properly determined that under the "special errand" exception, Mahoney was acting in the course of his employment at the time of his injury.

Dual Purpose
¶ 22 Cochran asserts that Mahoney is not covered under the IIA because the bike ride was undertaken solely for his own purposes. It argues that the BIIA erred when it applied the dual purpose exception to the "going and coming" rule. The dual purpose exception may apply when an employee *752 is injured in transit to or from a location off the employer's premises when the employee's presence at that location served both a business and personal purpose.[21]
¶ 23 The rule was first enunciated by Judge Cardoza in Marks' Dependents v. Gray:
"If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."[[22]]
¶ 24 Even if Mahoney opted to return from the garage by bicycle for exercise, as Cochran asserts, it was merely incidental to dropping off the van for servicing. Nothing in the record indicates, nor does Cochran argue, that Mahoney would have taken the bike ride even in the absence of the errand to service the van. We conclude that the Board did not err in applying the dual purpose exception in this case.
¶ 25 Cochran argues that the focus of the analysis should not be on Mahoney's errand to service the van, but rather his bicycle ride home. He relies on Dep't of Labor and Indus. v. Johnson,[23] for support.
¶ 26 There, the court held that the activity that is the focus of the court's inquiry should be narrowly construed.[24] The Department of Corrections assigned Charles Johnson to stay at home and perform no departmental work during his normal working hours. During this time, Johnson amputated three fingers while working on a personal project at his workbench. Johnson argued that he was covered because he was performing the work assigned at the time of the injury, i.e., he was at home, not doing Department work during a regular work shift. The court disagreed, declining to "focus broadly and allow coverage regardless of the specific activity ... engaged in at the time of the injury."[25] The court agreed with L & I's argument that operating the saw was neither in furtherance of its interest, required by the employer, nor done at the employer's direction.[26]
¶ 27 The court therefore denied coverage for the "extensive personal activities in which Johnson was engaged at the time of his injury" because he was "acting for his personal benefit at the time of the injury and the activity was more than an incidental, minor deviation from his normal work activities."[27]
¶ 28 Johnson is distinguishable from this case. Operating the saw was simply not arguably within the scope of anything Johnson's employer asked him to do. Unlike this case, neither the special errand rule nor the dual purpose exception applied in Johnson.
¶ 29 Cochran argues that under Johnson's narrow reading of eligible activities, the bike ride, which Mahoney took "for exercise," is not covered for a number of reasons.
¶ 30 Cochran relies on Thompson v. Dept of Labor and Indus. to support its contention that the focus should be narrow.[28] That case, however, is inapposite. In Thompson, the workman, who had been hired to make motorcycle deliveries, was fatally injured in a collision on his way home to lunch. The issue before the court was whether the employee was covered under the general rule that "when a workman is so injured while being transported in a vehicle furnished by his employer as an incident of the *753 employment, he is within the course of his employment ..."[29] That rule is inapplicable here.
¶ 31 Cochran argues that the bike ride was exclusively for Mahoney's own benefit, was not directed or required by his employer, nor did it further his employer's interest. Cochran maintains that Mahoney told several people that he was riding his bike "for exercise" or "to get in shape."
¶ 32 Cochran cites Hama Hama Logging Co. v. Dep't of Labor and Indus. where the employee, Spears, was required to sleep and board at his employer's camp in the woods. The employer operated a speeder on its railroad which its employees were allowed to ride into town for recreational and other purposes.[30] Spears was injured while riding the speeder into town on his day off, presumably for recreational purposes. The court concluded that the employee was not engaged in furthering the interests of his employer at the time he received his injuries.[31]
¶ 33 This case is distinguishable. The BIIA found that though Mahoney was not doing his regular work, nor being compensated for his time, taking the van for maintenance was a "special errand" in the furtherance of Cochran's interest.
¶ 34 Cochran's reliance on MacRae v. Dep't of Labor and Indus.[32] and Buckley Logging Co. v. Dep't of Labor and Indus.[33] is similarly misplaced.
¶ 35 MacRae excluded an employee from coverage under the "going and coming" rule. Generally, the "going and coming" rule, enacted in the IIA, denies industrial insurance coverage to workers who are injured while commuting to and from work. Though the worker's journey to and from work is because of their employment, courts have historically held that "industrial insurance was not intended to protect workers against all the perils of that journey."[34]
¶ 36 In MacRae, the employee had performed his regular work, which included delivering vehicles to a garage for servicing, and was returning home when he was injured.[35] He had been directed by his father, who was also his employer, to bring home his motorcycle from the garage when he finished making his delivery.[36] The court held that bringing home the motorcycle was not in the furtherance of his employer's business and that the father intended only that the motorcycle be retrieved for his son's personal use.[37] Moreover, given the nature of the employee's job, he "was but on his way home from work when he was injured, and [the court has] never held that a workman on his way to or from his work is in the course of his employment."[38]
¶ 37 Buckley Logging likewise applied the going and coming rule to bar a claim on behalf of Masserevich, a fatally injured employee.[39] There, work had been called off for the day due to dangerous conditions. Some workers rode the employer-provided transport home, while others decided to walk along a wooded path. Masserevich decided to strike off on his own, through a dangerous area off the trail. The court held that "his situation was no different from that of any workman who may leave the factory gate at the close of the day."[40]
¶ 38 The BIIA found that when Mahoney took his van for servicing on his day off, he was acting at the direction of his employer and in furtherance of his employer's business. That Mahoney was neither attired *754 in Cochran's required dress code, nor scheduled to work that day, does not preclude his activity from being in the course of employment in that servicing the van was in the furtherance of his employer's interest.[41]
¶ 39 Cochran provided vans to its service electricians for the mutual convenience and benefit of the company and the employee. Its vehicle maintenance policy required service electricians to take care of van maintenance. Cochran argues that Mahoney was not required to take the van to a garage on his day off. In fact, Mahoney had the option of dropping off the van at Cochran and taking a loaner van while Cochran had the van serviced. However, Cochran did not specify any time, place or manner for maintenance to be done, though they designated several specific garages for servicing purposes. Cochran admits that "What is universal among employees is that there is no set procedure imposed by Cochran for having the work done."
¶ 40 Therefore, Mahoney was acting within the guidelines of Cochran's vehicle maintenance policy, servicing the vehicle as Cochran directed for their mutual benefit. We conclude that Mahoney's actions in taking the van for servicing were required by his employer, at his employer's direction, and in furtherance of his employer's interest.

Recreational Activity
¶ 41 Cochran further argues that Mahoney was not covered under the act because his bicycle ride home was a recreational activity specifically exempted from coverage under the Act.
¶ 42 The Act specifically excludes from coverage:

An employee's participation in social activities, recreational or athletic activities, events, or competitions, and parties or picnics, whether or not the employer pays some or all of the costs thereof, unless: (i) The participation is during the employee's working hours, not including paid leave; (ii) the employee was paid monetary compensation by the employer to participate; or (iii) the employee was ordered or directed by the employer to participate or reasonably believed the employee was ordered or directed to participate.[42]
¶ 43 Though Susan Mahoney contends that this provision is directed at "competitions, picnics and similar social activities,"[43] the provision does not purport to limit its coverage to only those activities. Similarly, though the legislative history indicates that the impetus behind the bill was to codify holdings by the BIIA that "workers playing on company softball or football teams are not in the course of employment" if the games were not employer supported, there is no indication that the legislature intended to cover those activities exclusively.[44] Nonetheless, even if Mahoney was taking advantage of the return trip to take a recreational bike ride, he is still covered under the special errand and dual purpose exceptions, because those exceptions permit deviations or temporary detours for personal activities by the employee.[45]

Alternative Means of Commuting
¶ 44 Finally, Cochran argues that because Mahoney was riding his bicycle at the time of his accident, his claim is specifically barred by the statutory exemption from coverage of employees using an "alternative commute mode" under RCW 51.08.013(2). We disagree.
¶ 45 The alternative mode of commuting exception simply does not apply to the facts of this case. The statute states that "acting in the course of employment" does not include:
Time spent going to or coming from the employer's place of business in an alternative commute mode, notwithstanding that the employer (i) paid directly or indirectly, in whole or in part, the cost of a fare, pass, or other expense associated with the alternative commute mode; (ii) promoted and *755 encouraged employee use of one or more alternative commute modes; or (iii) otherwise participated in the provision of the alternative commute mode.
An "alternative commute mode" is
(a) a carpool or vanpool arrangement whereby a group of at least two but not more than fifteen persons including passengers and driver, is transported between their places of abode or termini near those places, and their places of employment or educational or other institutions, where the driver is also on the way to or from his or her place of employment or educational or other institution; (b) a bus, ferry, or other public transportation service; or (c) a non-motorized means of commuting such as bicycling or walking.[[46]]
¶ 46 "To commute" means to "travel back and forth regularly or frequently."[47] The statute clearly was "intended to deny coverage to workers injured during ordinary trips to or from work, even if the employer encouraged or paid for the worker to travel using a particular form of transportation."[48] It does not apply to this isolated bicycle trip between the garage and Mahoney's home. Nor does it apply "to workers traveling on a special errand at the employer's direction."[49]

ATTORNEY FEES
¶ 47 On appeal Susan Mahoney requests attorney fees and costs pursuant to RCW 51.52.130. The statute provides in relevant part:
If, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary, or in cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court.
¶ 48 Because Susan Mahoney prevails and her right to relief is sustained, we grant her request for reasonable attorney fees, subject to her compliance with RAP 18.1.
¶ 49 We affirm the order granting summary judgment.
WE CONCUR: KENNEDY and COLEMAN, JJ.
NOTES
[1] Dimmig v. Workmen's Comp. Appeals Bd., 6 Cal.3d 860, 101 Cal.Rptr. 105, 495 P.2d 433, 439 (1972); Morris v. Dep't of Labor and Indus., 179 Wash. 423, 38 P.2d 395 (1934) (employee in the course of employment throughout special errand, even if errand temporarily interrupted for personal activity); Hilding v. Dep't of Labor and Indus., 162 Wash. 168, 298 P. 321 (1931) (injury during return trip from Idaho where employee traveled at the direction of employer, in furtherance of employer's business covered under the IIA).
[2] Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).
[3] Wilson, 98 Wash.2d at 437, 656 P.2d 1030; CR 56(c).
[4] Wilson, 98 Wash.2d at 437, 656 P.2d 1030.
[5] Belnap v. Boeing Co., 64 Wash.App. 212, 216-17, 823 P.2d 528 (1992) (citing Ravsten v. Dep't of Labor and Indus., 108 Wash.2d 143, 146, 736 P.2d 265 (1987)).
[6] Ravsten, 108 Wash.2d at 146, 736 P.2d 265.
[7] Dennis v. Dep't of Labor and Indus., 109 Wash.2d 467, 470, 745 P.2d 1295 (1987); see RCW 51.32.010 ("each worker injured in the course of his or her employment" shall receive worker's compensation).
[8] Dennis, 109 Wash.2d at 470, 745 P.2d 1295; see also 1 Arthur Larson, The Law of Workmen's Compensation, § 14.00 at 4-1 (1990) (the course of employment requirement tests work-connection as to time, place and activity).
[9] RCW 51.08.013 (emphasis added).
[10] Lunz v. Dep't of Labor and Indus., 50 Wash.2d 273, 278, 310 P.2d 880 (1957).
[11] 1 Larson, § 16.00 at 4-196.
[12] 1 Larson, § 16.04 at 4-203, 4-204.
[13] Belnap, 64 Wash.App. at 222, 823 P.2d 528 (quoting 1 A. Larson § 16.11, at 4-204).
[14] 101 Cal.Rptr. 105, 495 P.2d at 434.
[15] Dimmig, 101 Cal.Rptr. 105, 495 P.2d at 434-35.
[16] Dimmig, 101 Cal.Rptr. 105, 495 P.2d at 439; see also State v. Starr, 185 Wash. 18, 52 P.2d 897 (1935) (motorcyclist, who struck employee while returning from errand upon which motorcyclist had been sent by his employer, held "in course of his employment" so as to entitle state to maintain action against employer of motorcyclist on widow's assigned cause of action).
[17] 179 Wash. 423, 38 P.2d 395.
[18] Morris, 179 Wash. at 425-26, 38 P.2d 395.
[19] Morris, 179 Wash. at 426-27, 38 P.2d 395.
[20] Morris, 179 Wash. at 427, 38 P.2d 395.
[21] In re Marlene Ann Martin, BIIA, Docket No. 852862 (1987).
[22] Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181 (1929); see also McNew v. Puget Sound Pulp & Timber Co., 37 Wash.2d 495, 499, 224 P.2d 627 (1950).
[23] 84 Wash.App. 275, 279, 928 P.2d 1138 (1996), review denied, 131 Wash.2d 1025, 937 P.2d 1102 (1997).
[24] Johnson, 84 Wash.App. at 279, 928 P.2d 1138.
[25] Johnson, 84 Wash.App. at 279, 928 P.2d 1138.
[26] Johnson, 84 Wash.App. at 279, 928 P.2d 1138.
[27] Johnson, 84 Wash.App. at 280, 928 P.2d 1138.
[28] 10 Wash.2d 277, 284, 116 P.2d 372 (1941).
[29] Thompson, 10 Wash.2d at 283, 116 P.2d 372.
[30] Hama Hama Logging Co. v. Dep't of Labor and Indus., 157 Wash. 96, 102, 288 P. 655 (1930).
[31] Hama Hama Logging, 157 Wash. at 98, 288 P. 655.
[32] 185 Wash. 343, 54 P.2d 1017 (1936).
[33] 189 Wash. 278, 64 P.2d 1049 (1937).
[34] Belnap, 64 Wash.App. at 221-22, 823 P.2d 528.
[35] MacRae, 185 Wash. at 343-44, 54 P.2d 1017.
[36] MacRae, 185 Wash. at 345, 54 P.2d 1017.
[37] MacRae, 185 Wash. at 346, 54 P.2d 1017.
[38] MacRae, 185 Wash. at 346, 54 P.2d 1017.
[39] Buckley Logging, 189 Wash. at 279-80, 64 P.2d 1049.
[40] Buckley Logging, 189 Wash. at 281, 64 P.2d 1049.
[41] See RCW 51.08.013
[42] RCW 51.08.013(2)(b) (emphasis added).
[43] See WA F.B. Rep., 1995 reg. Sess. H.B. 1414.
[44] See WA F.B. Rep., 1995 reg. Sess. H.B. 1414.
[45] See, e.g., Morris, 179 Wash. 423, 38 P.2d 395.
[46] RCW 51.08.013(2), 51.08.013(3).
[47] Shelton v. Azar, Inc., 90 Wash.App. 923, 937-38, 954 P.2d 352 (1998) (citing Webster's Third New International Dictionary 461 (1966)).
[48] Shelton, 90 Wash.App. at 938, 954 P.2d 352.
[49] Shelton, 90 Wash.App. at 938, 954 P.2d 352.