[No. 52217–1.   En Banc.   May 7, 1987.]

KEVIN RAVSTEN, *Respondent*, v. THE DEPARTMENT
OF LABOR AND INDUSTRIES, *Appellant*.

144

*Kenneth O. Eikenberry, Attorney General,* and *Charles R. Bush, Assistant,* for appellant.

*Walthew, Warner, Keefe, Arron, Costello & Thompson,* by *Eugene Arron* and *Robert H. Thompson,* for respondent.

CALLOW, J.—This case involves the extent of the responsibility of the Department of Labor and Industries to a permanently and totally disabled worker for payment of attorney's fees in a structured settlement. The workman was injured on the job on February 17, 1977, by third parties. RCW 51.24.010, then in effect (now repealed), which governed third party actions read in pertinent part:

> If the injury to a workman is due to negligence or wrong of another not in the same employ, the injured workman . . . shall elect whether to take under this title or seek a remedy against such other, such election to be in advance of any suit under this section and, if he takes under this title, the cause of action against such other shall be assigned to the department . . . if [he seeks a remedy against the third party], the department . . . shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected and the compensation provided or estimated by this title . . . *Provided,* That the injured workman . . .

electing to seek a remedy against such other person, shall receive benefits payable under this title as if such election had not been made, and the department . . . to the extent of such payments having been made by the department . . . to the injured workman . . . shall be subrogated to the rights of such person or persons against the recovery had from such third party and shall have a lien thereupon. . . .

. . .

In any action brought under this section wherein recovery is made by compromise and settlement or otherwise, *the department . . . to the extent of the benefits paid or payable under this title, shall bear its proportionate share of attorney's fees and costs incurred by the injured workman . . .* and the court shall approve the amount of attorney's fees.

(Italics ours.) The Board of Industrial Insurance Appeals stated its duty to be the determination of the monetary contribution of the Department toward attorney's fees incurred by the claimant in securing a recovery in the third party action. For purposes of determining the Department's responsibility, the Board based its calculations on (1) a reduction of the benefits payable by the amount of social security disability payments, (2) a lack of evidence of the need of attendant care benefits, and (3) the use of the present value of the total structured settlement for the determination of attorney's fees. These determinations were reversed by the Superior Court. The State has appealed.

We proceed subject to the provisions of RCW 51.52.115 which states:

Upon appeals to the superior court only such issues of law or fact may be raised as were properly included in the notice of appeal to the board, or in the complete record of the proceedings before the board. The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court as provided in RCW 51.52.110: . . . The proceedings in every such appeal shall be informal and summary, but full

opportunity to be heard shall be had before judgment is pronounced. In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same. If the court shall determine that the board has acted within its power and has correctly construed the law and found the facts, the decision of the board shall be confirmed . . .

Under the provisions of the statute, the findings and decisions of the Board are prima facie correct and the burden of proof is on the party attacking them. *Scott Paper Co. v. Department of Labor & Indus.*, 73 Wn.2d 840, 440 P.2d 818 (1968); *Sayler v. Department of Labor & Indus.*, 69 Wn.2d 893, 421 P.2d 362 (1966). It is the burden of the claimant here to establish that the Board's findings are incorrect by a preponderance of the evidence. *Chalmers v. Department of Labor & Indus.*, 72 Wn.2d 595, 434 P.2d 720 (1967). On an appeal from the Board, there is a new trial with the superior court reviewing, reconsidering and pondering anew the evidence in the record before the court. *Bayliner Marine Corp. v. Perrigoue*, 40 Wn. App. 110, 697 P.2d 277 (1985). On appeal from the superior court, the appellate court must ascertain whether there was substantial evidence to support the findings of the trial court. *Groff v. Department of Labor & Indus.*, 65 Wn.2d 35, 41, 395 P.2d 633 (1964). As observed in *Goehring v. Department of Labor & Indus.*, 40 Wn.2d 701, 246 P.2d 462 (1952), quoting at page 703 from *McLaren v. Department of Labor & Indus.*, 6 Wn.2d 164, 168, 107 P.2d 230 (1940):

"If, in the opinion of the reviewing court, the evidence as to a factual issue is evenly balanced, the finding of the department [now board of industrial insurance appeals] as to that issue must stand; but, if the evidence produced by the party attacking the finding preponderates in any degree, then the finding should be set aside."

The issues presented are:

1. When a claimant suffers from "permanent total disability" as defined by RCW 51.08.160, does RCW 51.32.220 require that his future monthly industrial insurance pay-

ments be reduced by the amount of his social security disability benefits?

2. When a claimant is totally and permanently disabled as defined by RCW 51.08.160 and is entitled to "receive monthly during the period of such disability" a pension under RCW 51.32.060, what evidence is required to establish the future date of entitlement to attendant services as described in RCW 51.32.060(14) which provides:

> In case of permanent total disability, if the character of the injury is such as to render the worker so physically helpless as to require the hiring of the services of an attendant, the department shall make monthly payments to such attendant for such services as long as such requirement continues, . . .[?]

3. When a totally and permanently disabled claimant has entered into a retainer agreement which has provided for the "law firm to receive 33⅓ percent of any gross recovery" and the total award to the claimant is to be paid over a guaranteed period in the claimant's life rather than in a lump sum, is the Department's share of attorney's fees to be computed (a) upon the total moneys to be paid the claimant over his lifetime, or (b) upon the present value of such total award?

On February 17, 1977, while in the course of his employment for Western Foam Pack, Inc., Ravsten was severely injured due to the negligence of third parties. He timely filed an accident report with the Department of Labor and Industries and eventually was classified as permanently and totally disabled by the Department. His claim was allowed and benefits paid.

The claimant, Ravsten, brought a third party cause of action for his personal injury under RCW 51.24.010 while receiving industrial insurance compensation and benefits. He agreed to pay his attorneys a third of his gross recovery. The action against the third parties was concluded in June of 1981 for a structured settlement which totaled $1,370,000 in guaranteed future dollars or $1,100,113.05 in present dollars. The claimant has stipulated that the lower value is

the present cash value as of January 12, 1982, of the guaranteed recovery settlement.

On January 12, 1982, the Department issued an order computing the Department's proportionate share of the attorney's fees and costs incurred by the claimant in the third party settlement, and reserved a net lien in the sum of $15,030.86 against the claimant's third party recovery. The Department demanded reimbursement and the claimant appealed to the Board of Industrial Insurance Appeals.

The Board of Industrial Insurance Appeals computed, that the present value of the claimant's future pension payments payable by the Department was $204,885.60. As of January 12, 1982, this sum was arrived at as the product of Ravsten's monthly pension payment entitlement from workers' compensation funds of $309 (established by deducting from the $705.10 base and supplemental pension, the social security offset of $396.10) multiplied by 12 months, which figure was then multiplied by 37 years (until the claimant reaches age 62) and adding thereto the product of $705.10 and 96 months, the claimant's life expectancy.

The $204,885.60 added to $117,238.85 for benefits already paid, and $100,000 for future medical costs comprised the total benefits paid and payable to the claimant under the workers' compensation act, to wit: $422,124.45. The Board found that Ravsten had not shown that he was so physically helpless that he was in need of a personal attendant's care as of January 12, 1982, or that he will require an attendant 15 years hence at age 40. The Board made no provision for attendant care.

I

We turn to the first issue which inquires whether RCW 51.32.220 requires that the claimant who is permanently and totally disabled under RCW 51.08.160 must have his future monthly payments reduced by the amount of his social security disability benefits.

■ RCW 51.32.220 calls for the state compensation

received under RCW 51.32 by a permanently totally disabled person to be reduced by an amount equal to the benefits payable under the federal disability act. *See* 42 U.S.C. § 424a. The constitutionality of 42 U.S.C. § 424a was upheld in *Richardson v. Belcher,* 404 U.S. 78, 30 L. Ed. 2d 231, 92 S. Ct. 254 (1971), the Court holding that an offset could be permitted when social security benefits and workmen's compensation benefits duplicated efforts to provide the same relief. The opinion held that the avoidance of duplication by the federal statute did not violate equal protection or the due process clause of the Fifth Amendment. The correlative state statute surmounts these same constitutional requirements.

It is the purpose of the statutory scheme to see that a disabled person is fully compensated for his disability, but not permitted to collected overlapping awards. In *Herzog v. Department of Labor & Indus.,* 40 Wn. App. 20, 21–22, 696 P.2d 1247 (1985), the interrelationship of the two statutes is well expressed as follows:

> Some recipients of workers' compensation disability payments are also entitled to social security payments. When this is so, federal law prohibits the combined benefits from exceeding 80 percent of the recipient's average current earnings at the time the disability was suffered. Combined benefits exceeding this level must be reduced. Federal law permits a state to take full advantage of this by permitting the reduction to be taken entirely from the state benefits. Washington has accepted this largess by the enactment of RCW 51.32.220.

(Footnotes omitted.)

█ The concept of the State paying its proportionate share of the attorney's fees when a third party recovery is made which will benefit the accident fund is based upon subrogation principles and fairness. The relief which will benefit the Industrial Insurance Trust Fund from the third party recovery can only be to the extent of and based upon the Department's obligation to pay pension benefits from the Fund. Under RCW 51.32.220 the Department's obligation to compensate the claimant is reduced by the amount

payable under social security. The Department is responsible for attorney's fees only to the extent the third party recovery can be applied to the reduction of the Department's duty to pay compensation and benefits under RCW 51.32.220. The reduction of the Department's net obligation to pay permanent total disability compensation did not come about through the efforts of counsel for the claimant, but through the operation of RCW 51.32.220. The sum of benefits payable by the Department, which will be reduced by the third party recovery, is the net payable under RCW 51.32.220(1), to wit: permanent total disability compensation under RCW 51.32 less social security disability payments.

We note that under RCW 51.24.050(7)(c) the statutory language speaks of "compensation and benefits paid from state funds" and under RCW 51.24.060(1)(c)(i) the statute says: "reasonable attorneys' fees incurred by the worker . . . to the extent of the benefits paid or payable under this title". While this statutory language came about when RCW 51.24.010 was repealed and the format under RCW 51.24.030 to .110 enacted, we find it indicative of the legislative intent and properly of assistance in constructing RCW 51.32.220. The function of judicial interpretation of statutory enactments is to effectuate the object and intent of the Legislature. Legislative intent is to be ascertained from the statute as a whole; and the sequence of all statutes relating to the same subject matter should be considered. An original act and an amendment should be read and construed as one law passed at the same time. *Amburn v. Daly,* 81 Wn.2d 241, 501 P.2d 178 (1972); *Bradley v. Department of Labor & Indus.,* 52 Wn.2d 780, 785, 329 P.2d 196 (1958). We view the passage of RCW 51.24.050 and .060 as clarifying the Legislature's original intent as to the meaning of terms. Where the statute has not been interpreted to mean something different and where the original enactment was ambiguous to the point that it generated dispute as to what the Legislature intended, a subsequent amendment can enlighten courts as to a statute's

original meaning. *Overton v. Economic Assistance Auth.*, 96 Wn.2d 552, 637 P.2d 652 (1981). We perceive that it was the intent of the Legislature that RCW 51.32.220 be read as requiring the reduction of the State compensation to be paid a permanently totally disabled worker by the amount payable to the worker from social security.

The claimant argues that the social security reduction of benefits payable under RCW 51.32.220(1) cannot occur because he was not notified of the reduction under RCW 51.32.220(4). We disagree. The requirement of notification of the worker prior to reduction of compensation under RCW 51.32.220 exists to permit the worker to object to a reduction in benefits by the Department, if disputed, but we find no correlation between that provision and the purposes of RCW 51.24.010.

We emphasize that there are two aspects to the issue presented: (1) the problem between the claimant and the State involving the reduction of the benefits payable to the claimant under RCW Title 51 by the amount of social security benefits, and (2) the problem between the claimant and his attorneys in ascertaining the amount of money which the claimant is to receive as "gross recovery" as that term relates to the payment of attorney's fees under the retainer agreement. The State has to bear its proportionate share of attorney's fees to the extent of the benefits recovered which would have been otherwise payable under RCW Title 51 and are to be repaid to the State, while the attorneys have the right to one–third of the "gross recovery" to the client.

Fee arrangements between attorneys and clients are varied. The statute recognized that the work of attorneys for claimants in workman's compensation cases could involve the claimant against the Department and, as here, the claimant also seeking recovery against a third party tortfeasor. The statute recognized that the work of the attorney could benefit not only the claimant, but could reduce some of the burden which would have been borne by the State were it not for the attorney's efforts. The statute reflects a

desire to encourage such efforts, but also contains a provision for court approval of the amount to be paid in attorney's fees to prevent overreaching and to adjust the bearing of attorney's fees between the claimant and the State in a fair and reasonable manner. Final approval by the court of the attorney's fees is appropriate here. RCW 51.24.010.

## II

The second issue raised concerned the evidence necessary to establish that a claimant is entitled to attendant care under RCW 51.32.060(14).

The Board found as follows:

4. The claimant has not shown that the residuals of his industrial injury of February 17, 1977, rendered him so physically helpless that he was in need of a personal attendant's care as of January 12, 1982, nor that he will require such care beginning fifteen years hence at age forty.

The claimant has not shown by a preponderance of the evidence that this finding should be overturned. Claimant relies upon (a) the fact that the Department has classified him as totally, permanently disabled and (b) upon the testimony of his lawyer. The evidence to overcome the finding of the Board and establish the date upon which attendant care would be needed is insufficient.

Upon trial de novo of the cause in superior court, the trial court found:

## VIII.

As a result of the injury of February 17, 1977, the plaintiff is a C8 quadriplegic with no functional use of his lower extremities and only gross use of his upper extremities. He has no finite control of his hands. He is confined to a wheelchair. He wears a bag for urinary control and has periodic treatments which are required for urinary infections. He has been provided with around home care by a brother and some close friends who live with him. His disability is such that he requires attendant care.

We hold that the trial court could not overturn the finding of the Board and enter its own finding when the only sup-

port for such action was an acceptance of a medical conclusion from a lay witness. *Page v. Department of Labor & Indus.,* 52 Wn.2d 706, 328 P.2d 663 (1958) states that a medical testimony is required to establish disability and that if there is an aggravation of an existing disability, medical testimony is necessary to establish the percentage of aggravation. This comports with the recognition that diagnosis and prognosis are medical matters which require medical testimony and cannot be evaluated by the observations of lay witnesses.

The claimant calls our attention to *Bennett v. Department of Labor & Indus.,* 95 Wn.2d 531, 533–34, 627 P.2d 104 (1981), which stated in part:

> The causal connection between a claimant's physical condition and his employment must be established by medical testimony. *Parr v. Department of Labor & Indus.,* 46 Wn.2d 144, 278 P.2d 666 (1955). It is not always necessary, however, to prove every element of such causation by medical testimony. If, from the facts and circumstances *and the medical testimony given,* a reasonable person can infer that the causal connection exists, the evidence is sufficient. *Sacred Heart Medical Center v. Carrado,* 92 Wn.2d 631, 600 P.2d 1015 (1979). This rule is in harmony with our holding in *Bitzan v. Parisi,* 88 Wn.2d 116, 558 P.2d 775 (1977), that lay witnesses may testify to such aspects of physical disability of an injured person as are observable by their senses and describable without medical training, and further that an injured person can testify regarding the subjective aspects of an injury and to the limitations of his physical movements.

(Italics ours.) We do not quarrel with the statement that a lay person can infer from "the facts and circumstances and the medical testimony given" that a causal connection exists between a physical condition and a claimant's employment. Nor do we quarrel with the statement that a lay person can testify as to what can be observed by the untrained eye. However, *Bennett v. Department of Labor & Indus., supra,* does not state that a lay person can establish when attendant care will be required by a disabled

person. Nor does *Bennett* permit a lay person to infer a causal connection between employment and physical condition absent any medical testimony on the question. Some medical testimony must support the conclusion. Such testimony amounts to a prognosis as to the time when a certain percentage of physical deterioration or incapacity will have been reached and this requires the educated estimate of the doctor based upon training and experience. It cannot be based upon the guesswork of the ordinary person. The claimant requests a rule that would permit every person classified as totally and permanently disabled to be afforded attendant care based solely on the testimony of his lawyer. While the trier of the fact determines who it will believe and the testimony of a physician is not conclusive, in this situation the testimony of the attending physician must form the basis of the finding. *See Chalmers v. Department of Labor & Indus.,* 72 Wn.2d 595, 434 P.2d 720 (1967). It may be that the claimant is entitled to attendant care at this moment, but we cannot approve a rule that would accept the testimony of a lay witness as to the time when a claimant's physical condition would have deteriorated to the point where full-time attendant care would be needed.

■■ Further, we agree with the Department that WAC 296–20–091 is presumed valid and is applicable. An administrative rule adopted pursuant to statutory authority is presumed valid and should be upheld when consistent with the enabling statute. *Washington Water Power Co. v. State Human Rights Comm'n,* 91 Wn.2d 62, 586 P.2d 1149 (1978). The party attacking the validity of an administrative regulation has the burden of showing why the regulation is in conflict with the intent and purpose of the statute being implemented. *Vliet v. Department of Labor & Indus.,* 30 Wn. App. 709, 638 P.2d 112 (1981). We find WAC 296–20–091 to be within the authority granted by RCW 51.04.020 and consistent with the rulings that have required medical testimony and opinion to prove those matters beyond the ken of lay people. WAC 296–20–091

places the fixing of the need for attendant care directly under the responsibility of the attending doctor, stating in part:

> Private room—Intensive care special or home nurses. When the worker's condition is such that he requires special nurses . . . the attending doctor may order these services . . .
>
> RCW 51.32.060 provides attendant care for injured workers on total permanent disability pension when such injured worker is so "physically helpless as to be unable to care for his personal needs." . . .
>
> When the attending doctor has reason to believe such care is needed the following information must be submitted in addition to basic report requirements outlined in WAC 296-20-035:
>
> . . .
>
> (4) Length of time special/home nurse care will be required.

We hold that to establish the date when attendant care is needed for a permanently and totally disabled person, the testimony of the attending doctor is required to fix the date when physical deterioration will reach that stage. It is apparent that the time will come, if it has not already arrived, when attendant care will be required. The Department recognizes that where an injured worker pursues a third party action and recovers, the Department is required to bear its proportionate share of attorney's fees and costs to the extent of the benefits paid or payable under RCW Title 51. In order to determine the benefits payable under RCW Title 51, there must be a projection of the benefits to which a claimant will be entitled in the future. The benefits payable cannot be computed, nor can the Department's proportionate share of attorney's fees and costs be computed until the date is established when attendant care will be required, as contemplated by RCW 51.32.060(14). Therefore, it is appropriate and proper that the cause be remanded to the Department for (a) the establishment of the date upon which attendant care will be required and (b) the duration of such care, based upon competent medical

testimony.

## III

The third and final issue presented is whether the share of attorney's fees to be paid by the Department of Labor and Industries should be computed on the one-third of the total award to be paid to the claimant during his life or one-third of the present value of said award.

RCW 51.24.010 provided that if the injured workman elected to seek recovery from the third party, the injured workman would receive benefits under RCW Title 51 as if the election had not been made; but the Department would be subrogated to the rights of the injured workman, against the recovery from the third party, to the extent of payments having been made as the statute says *"under this title"*. RCW 51.24.010 also required that the Department share the litigation expenses of the third party recovery by contributing its proportionate share to the extent "of the benefits paid or payable." The Department is to pay its proportionate share by comparing the sum of benefits paid and payable to the gross third party recovery and litigation costs. The parties agree that $117,238.85 in benefits has been paid and that $9,475 has been incurred in litigation costs. The parties disagree on the value of the "benefits payable" and the amount of attorney's fees. We have discussed the problem of "benefits payable" and turn to the issue of attorney's fees.

The Board decision and order stated in part:

> The dollar amount of both the numerator (the claimant's entitlement under the Act) and the denominator (the claimant's third-party recovery) of this statutorily-prescribed ratio are in dispute. Chief in contention is the question as to the proper dollar valuation to be placed on the third-party recovery. That action was resolved in May 1981, prior to the trial, by what is known as a "structured settlement", the terms thereof being as follows:
> 1. $410,000 cash;
> 2. $33,000 yearly lifetime annuity beginning June 1, 1982, for 20 years certain;

3. $300,000 payable in three equal installments of $100,000 each at the 10th, 20th and 30th year settlement anniversaries.

Thus, by June of the year 2011, the claimant, or, in the event of his death prior thereto, the claimant together with his estate, will have received a total of $1,370,000. This sum is guaranteed—i.e., it is a sum certain to be received by the claimant, or by him together with his estate. Accordingly, the claimant's attorneys argue, in accordance with their contingent fee retainer agreement with the claimant, as well as with an order of the Superior Court approving attorneys' fees in the third–party action, they are entitled to one–third of the $1,370,000 gross recovery as their attorneys' fees, to wit $456,666.67. Thus, it is the contention of the claimant's attorneys that the Department's statutory "proportionate share" liability for the attorneys' fees is to be applied to the sum of $456,666.67.

Obviously, the claimant's attorneys have predicated their one–third attorneys' fees on the basis of a lump-sum recovery—i.e., on the basis that the $1,370,000, in its entirety, is payable now in today's dollars. That, of course, is not the case. Only $410,000 thereof, the up-front cash payment, is in today's dollars. The remainder is payable over time in future dollars stretching out to the year 2011. Economics has its share of great truths; one of them is "time is money"—a dollar today is worth more than a dollar tomorrow. Present observations of reported inflation rates gives today's dollar a "half–life" of eight to ten years. If these rates are accurate then a substantial portion of the recovery by Mr. Ravsten will be paid in dollars more akin to fifty–cent pieces than dollar bills.

In short, the sum of $1,370,000 merely constitutes the nominal dollar amount of the recovery; the actual amount in today's purchasing value is much less. Precisely how much less requires that the cash flow of the recovery be solved for "present value"—i.e., the present value of each cash installment must be computed and then added up to obtain the total "present cash value" of the recovery. The expert testimony herein establishes, and the parties have agreed, that the present cash value of the $1,370,000 as payable under the terms of the settlement is $1,100,113.05. Thus, one–third thereof, or

$366,704.35 is the proper attorneys' fee appliable herein for purposes of determining the Department's proportionate share.

■ The concept of structured settlements is of recent origin. We have recognized the attractive aspects of structured settlements from the standpoint of the paying party. The concept also arises from the realization on the part of the recovering party that larger figures are acceptable to the paying party if payment is stretched over a considerable period of time. *Perez v. Pappas,* 98 Wn.2d 835, 840, 659 P.2d 475 (1983) observed in footnote 1:

> Testimony indicated that the accepted practice with regard to a structured settlement and contingent fee agreement is to apply the agreed upon percentage to the present value of the settlement. Other methods also exist. *See, e.g.,* Choulos, *Structured Settlements: Cure or Curse?,* Trial, Nov. 1980, at 73; Krause, *Structured Settlements for Tort Victims,* 66 A.B.A. J. 1527 (1980); Mangelsdorf, *Structured Settlements in Review: The Fundamental Concept,* 4 Am. J. of Trial Advoc. 559, 563–64 (1981); Martin, *Structured Settlements: Protecting the Plaintiff,* Trial, Feb. 1982, at 50.

Counsel for the claimant desires payment of the contingent fee now rather than over the life of the settlement. While *Perez v. Pappas, supra,* noted that an attorney and client could make any arrangement between themselves that was appropriate under the Rules of Professional Conduct (*see* RPC 1.5), the controversy before us involves not the attorney–client relationship, but the interplay between the State and claimant's counsel brought about by RCW 51.24.010. In addition, counsel requests payment now, not later, which is not surprising considering the practicalities of the practice of law and the transitory nature of partnerships. Our disposition accordingly must be on the basis that payment of attorney's fees will be made forthwith.

In *Johnson v. Sears, Roebuck & Co.,* 291 Pa. Super. 625, 436 A.2d 675 (1981) it was held that in computing the amount of an attorney's contingent fee where a structured settlement had been arranged, the percentage was to be

applied to the total cash payments presently made to the client plus the *cost* of the annuity to be paid the client, rather than on the total amount that would be paid to the client if he lived the normal life expectancy of a 15–year–old boy. In *Merendino v. FMC Corp.*, 181 N.J. Super. 503, 438 A.2d 365 (1981) the computation of fees on a structured settlement was based on the recovery figure discounted to "actual present value of the settlement." Since an annuity was also involved in the structured settlement, marketplace cost of the annuity was held to be the best gauge of present value upon which to calculate the attorney's fee.

We agree that "time is money" and that for counsel to be paid his contingent fee now, payment must be computed on the gross recovery's present value. We uphold the Board's application of the percentage to the present value of the total of the structured settlement. *See Godwin v. Schram,* 731 F.2d 153, 157–59 (3d Cir. 1984); Lilly, *Alternatives to Lump Sum Payments in Personal Injury Cases,* 44 Ins. Coun. J. 243, 246 (Apr. 1977); Schwartz & Mitchell, *An Economic Analysis of the Contingent Fee in Personal Injury Litigation,* 22 Stan. L. Rev. 1125 (1970); Annot., *Propriety and Effect of "Structured Settlements" Whereby Damages Are Paid in Installments Over a Period of Time, and Attorney's Fees Arrangements in Relation Thereto,* 31 A.L.R.4th 95, 97 (1984).

## CONCLUSION

We hold that RCW 51.32.220 requires that in order to determine the Department's proportionate share of attorney's fees and costs the computation of benefits payable must include the reduction of benefits payable by the social security benefits received and to be received by the claimant. We hold that the date of onset of the need for attendant care cannot be proven by the testimony of other than an attending physician. However, we find it apparent that attendant care may be needed now and for this permanently totally disabled claimant the establishment of the date that such need will occur, if ever, is essential to the

computation of the benefits payable to him. We hold that the computation of attorney's fees is to be upon the present value of the total award to the claimant, including permanent attendant care when the need is established. An attorney is entitled to fees based upon benefits secured by the claimant which result from the attorney's efforts, but an attorney is not entitled to fees based upon benefits which would have been paid to the claimant in any event.

The cause is remanded for further proceedings before the Board, for the taking of additional testimony from the attending doctor of the claimant as to the need for attendant care. It is also remanded to the Board for recomputation of the proportionate share of attorney's fees to be borne by the State considering and taking into account the testimony of the attending doctor as to the need for attendant care and pursuant to the principles enunciated in this opinion. RCW 51.52.106. The total amount of attorney's fees to be paid by the State and by the claimant shall be subject to final approval by the court. RCW 51.24.010. Review of said recomputation and the further order and decision of the Board based thereon shall reserve to all parties having a right of appeal therefrom the full exercise of that right after entry of such decision and order. RCW 51.52.110.

PEARSON, C.J., GOODLOE, J., and CUNNINGHAM and WIELAND, JJ. Pro Tem., concur.

ANDERSEN, J. (concurring in part, dissenting in part)—I concur with the majority opinion except as to the majority's conclusion that the Department's responsibility for claimant's attorneys' fees should be based on the state compensation owed claimant less the social security disability benefits he is to receive. I would hold that the Department's share of attorneys' fees must be based on the claimant's entire entitlement under the Industrial Insurance Act.

I base my dissent on the following wording of RCW 51.24.010:

> In any action brought under this section wherein recovery is made by compromise and settlement or otherwise, the *department or self–insurer, to the extent of the benefits paid or payable under this title,* shall bear its proportionate share of attorney's fees and costs incurred by the injured workman or his widow, children, or dependents, as the case may be, and the court shall approve the amount of attorney's fees.

(Italics mine.) RCW 51.24.010 (part).

The italicized portion of the statute makes it clear that the Department's share of attorneys' fees is to be based on the entire sum of benefits "payable" to a claimant. While this statute has since been repealed, it was still in effect when RCW 51.32.220, requiring state compensation under the Industrial Insurance Act to be reduced by the amount of federal disability benefits received, was adopted.[1]

These statutes are not inconsistent for the following reasons. Whether the State pays the entire amount due a claimant under the Industrial Insurance Act, or whether the federal government pays some portion thereof pursuant to RCW 51.32.220(1), the claimant's entitlement remains the same. It is that entitlement, in its entirety, that forms the basis of the Department's share of attorneys' fees under RCW 51.24.010, set out above. This statute plainly states that the Department's share of attorneys' fees shall be based on the "benefits . . . payable under this title". Those benefits consist of the entire amount due to the claimant from the State, regardless of what portion is paid by what governmental body.

To my view, the majority errs when it holds that the Department's share of attorneys' fees is to be based on the claimant's entitlement less his social security benefits and I dissent from that part of the opinion. I would hold that the Department's share of the claimant's attorneys' fees should

---

[1]*See* Laws of 1975, 1st Ex. Sess., ch. 286, § 3.

be based on the entire amount of claimant's entitlement, regardless of the share paid by the federal government.

UTTER, DOLLIVER, and DURHAM, JJ., concur with ANDERSEN, J.