[No. 15086-7-II.   Division Two.   December 16, 1993.]

METROPOLITAN FEDERAL SAVINGS AND LOAN ASSOCIATION, *Plaintiff,* v. WEBSTER L. ROBERTS, ET AL, *Defendants,* MUTUAL SECURITY FINANCING, INC., *Appellant,* STEPHEN H. DEMAREST, *Respondent.*

*Bryan Chushcoff,* for appellant.

*Stephen H. Demarest,* pro se.

MORGAN, J. — This is a dispute over a mortgagor's statutory redemption rights. The disputing parties are Stephen Demarest and Mutual Security Financing, Inc., whose president is David Swadberg. Demarest is an attorney and real estate broker. Swadberg is in the business of buying and selling real property. Demarest prevailed in the trial court, and Mutual now appeals. We reverse and remand.

In 1966, Webster and Molly Roberts signed a note for $12,500 in favor of the predecessor in interest of Metropolitan Savings and Loan. The note was secured by a mortgage on real estate located at 1720 South Sprague, Tacoma. The real estate was improved with a house.

The Roberts moved to Virginia in 1988. Thereafter, the house was occupied by one Dixie McKee. According to McKee,

she and the Roberts orally agreed that she would buy the house by making monthly payments to them. She made few if any payments, and her authority to occupy the premises expired by November 1, 1988. Nonetheless, she "continued to reside [in the house] without the permission or authority of the Roberts."[1]

On February 13, 1989, Metropolitan sued to collect the note and foreclose its mortgage. It alleged that the Roberts were in default on the note; that it should receive judgment for the remaining balance of $5,757.46, plus interest, attorney's fees, and other costs; that its mortgage should be foreclosed; and that the property should be sold at foreclosure sale in the manner provided by law. It also prayed "[t]hat if any deficiency remains after application of the proceeds of such sale, that execution may be issued for any such deficiency against the defendants Webster L. Roberts and Molly J. Roberts, and enforced against any other property of theirs not exempt from execution."[2]

On May 1, 1989, the Pierce County Superior Court granted a default judgment against the Roberts. The judgment was for a total of $7,978.79, which included the $5,757.46 due on the note, interest, attorney's fees, and other costs. It required that Metropolitan's mortgage be foreclosed and that the house be sold by the sheriff in the manner provided by law. It declared, "[I]n the event the sum received from the sale is not sufficient to pay the judgment, interest and costs in full, execution shall issue for any deficiency against defendants, Webster L. Roberts and Molly J. Roberts . . . and shall be enforced against any other property of theirs not exempt from execution."[3] It further declared that the title of Roberts and anyone claiming through them was foreclosed, "except only for the statutory right of redemption allowed by law."[4]

---

[1] Exhibit 12 (affidavit of McKee, dated July 26, 1989).

[2] Clerk's Papers, at 4.

[3] Clerk's Papers, at 13.

[4] Clerk's Papers, at 13.

On May 17, 1989, the court issued an order directing the sheriff to sell the property. On May 23, 1989, the attorney for Metropolitan instructed the sheriff to sell the property subject to a 12-month redemption period. Commencing June 14, 1989, a public notice of sale was published in a Tacoma newspaper in accordance with RCW 6.21.030.[5]

The public notice of sale drew the interest of Demarest and Swadberg, neither of whom was aware of the other. Each viewed the house, and each independently spoke with McKee. Each was told by McKee that though she had once agreed to buy the house, she "hadn't made any payments in a long time."[6]

On July 14, 1989, a sheriff's sale was held. Demarest and Mutual submitted competing bids. Demarest prevailed with a bid of $9,975. He tendered that amount and received a copy of a certificate of sale.

On July 17, 1989, Demarest[7] contacted the Roberts and offered to pay "a hundred dollars or so"[8] for a quitclaim deed. The Roberts declined, saying that others were offering more. On July 21, 1989, they quitclaimed their redemption rights to Mutual for $3,000. Mutual recorded the deed 4 days later.

Still on July 21, Demarest moved to intervene in Metropolitan's original foreclosure action "for the limited purpose of having the court declare the subject property to be abandoned within the meaning of R.C.W. 61.12.093".[9] He alleged

---

[5]Also, on May 31 the sheriff sent the Roberts a "Notice to Judgment Debtor of Sale of Real Property". This notice stated the property would be sold on July 14, 1989. It also stated, in large, bold type, that the property would be sold subject to "a redemption period of one year which will expire at 4:30 P.M. On the 14th day of July 1990." Exhibit 1. This notice was not sent to Demarest or Mutual, because it was not then known that either would become interested in the property.

[6]Report of Proceedings (May 15, 1991), at 30; *see also* Report of Proceedings (May 15, 1991), at 88.

[7]During several of the events herein, Demarest was acting through an agent named Ernest Chappel. For convenience, however, we refer only to Demarest.

[8]Report of Proceedings (May 15, 1991), at 58.

[9]Clerk's Papers, at 17.

that the Roberts had neither "made payments on the property nor occupied the premises for a period well in excess of six (6) months", and that no other person had "occupied the premises by the authority of [the Roberts] during that time period and before."[10] Three days later, he filed the Roberts' undated declaration "that we have not given our permission or authority for any person to inhabit the premises at 1720 So. Sprague in Tacoma, Washington."[11]

Demarest did not give notice of his motion in the manner required by the rules of court. On July 24, however, he phoned Swadberg's office and left a message stating that the property had been abandoned and that there were no redemption rights. The message does not show that Demarest mentioned the motion he had already filed. Swadberg later testified that he was on vacation until July 31, so he actually received the message on that date.

On July 28, 1989, Demarest obtained an ex parte order from a judge of the Pierce County Superior Court. The order stated as follows:

1. That Stephen H. Demarest, as purchaser of the subject property be and hereby is allowed to intervene herein.
2. That the subject property be and hereby is declared to be abandoned within the meaning of RCW 61.12.093.
3. That the statutory rights of redemption, as provided for in the judgment entered on May 1, 1989, hereby are terminated . . ..[12]

On August 4, 1989, Metropolitan obtained an order confirming sale. The order recited that the property had been sold to Demarest for $9,975. It directed the clerk to disburse $8,148.22 to Metropolitan and $1,826.78 to the Roberts, and the clerk performed as ordered. The sheriff then issued his deed to Demarest.[13] See RCW 6.21.120.

---

[10]Clerk's Papers, at 16, 17.

[11]Clerk's Papers, at 20.

[12]Clerk's Papers, at 21, 22.

[13]The order confirming sale and the sheriff's deed may have been issued prematurely, i.e., before 20 days had elapsed. See RCW 6.21.110(2). We do not address that issue because other issues are dispositive.

On August 7, 1989, Mutual notified the sheriff that it intended to exercise the Roberts' right of redemption. On August 14, 1989, Mutual tendered $10,278.08 for that purpose. The sheriff refused the tender on grounds that he had already issued his deed.

On September 14, 1989, Mutual moved to intervene and set aside the ex parte order of July 28. On September 29, both motions came before the judge who had signed the ex parte order. The motion to intervene was heard and granted. However, Demarest and Mutual stated they had agreed to a continuance of the motion to set aside the order, so additional briefing could be done. The court expressed reluctance, saying,

> if there is an order of abandonment in the face of a vested property, rights of redemption, it shouldn't be allowed to stand. I would have made an error. . . . I don't know if I was properly advised at the time of the entry of the order and I think it should be vacated immediately.[14]

Nevertheless, the court allowed the continuance, apparently because it had been agreed to by both parties.

On October 11, 1989, Mutual filed a third party complaint in the original foreclosure action. The relief sought was vacation of the ex parte order of July 28. McKee was brought in as a defendant, perhaps because she and Demarest had entered into an earnest money agreement on July 25, 1989.[15] Demarest then suggested to McKee "that if she wanted to buy the house through me, she would be better off having a different judge hear the balance of the case."[16] Apparently McKee agreed, for Demarest helped her prepare an affidavit of prejudice that was filed on November 17. It disqualified the judge who had issued the ex parte order, *see Marine Power & Equip. Co. v. Department of Transp.*, 102 Wn.2d

---

[14]Report of Proceedings (Sept. 29, 1989), at 2. Ironically, the judge noted a minute or two later, "[W]e're just creating a super mess here." Report of Proceedings (Sept. 29, 1989), at 4.

[15]In the earnest money agreement, Demarest purported to sell the property to McKee for $25,000.

[16]Report of Proceedings (May 15, 1991), at 80.

457, 687 P.2d 202 (1984), and the case was transferred to a different judge for trial.

A bench trial was held in May 1991. Only Demarest and Mutual appeared. The trial court ruled that Mutual was not entitled to relief from the ex parte order of July 28, 1989. Judgment for Demarest was entered on June 14, 1991, and Mutual filed this appeal.

Generally, property offered at a sheriff's sale "shall be sold subject to redemption, as provided in chapter 6.23 RCW." RCW 6.21.080;[17] *see also* RCW 61.12.060.[18] Generally, the period for redemption is 1 year. RCW 6.23.020(1).[19]

Notwithstanding these general rules, abandoned property can sometimes be sold free of redemption rights. RCW 61.12-.093 provides:

> In actions to foreclose mortgages on real property improved by structure or structures, if the court finds that the mortgagor or his successor in interest has abandoned said property for six months or more, the purchaser at the sheriff's sale shall take title in and to such property free from all redemption rights as provided for in RCW 6.23.010 et seq. upon confirmation of the sheriff's sale by the court. Lack of occupancy by, or by authority of, the mortgagor or his successor in interest for a continuous period of six months or more prior to the date of the decree

---

[17]RCW 6.21.080 provides:

"A sale of a real property estate of less than a leasehold of two years unexpired term and a sale of a vendor's interest in real property being sold under a real estate contract shall be absolute. In all other cases, real property shall be sold subject to redemption, as provided in chapter 6.23 RCW."

[18]RCW 61.12.060 provides in pertinent part:

"In rendering judgment of foreclosure, the court shall order the mortgaged premises, or so much thereof as may be necessary, to be sold to satisfy the mortgage and costs of the action. . . ."

[19]RCW 6.23.020(1) provides:

"Unless redemption rights have been precluded pursuant to RCW 61.12.093 et seq., the judgment debtor or any redemptioner may redeem the property from the purchaser at any time (a) within eight months after the date of the sale if the sale is pursuant to judgment and decree of foreclosure of any mortgage executed after June 30, 1961, which mortgage declares in its terms that the mortgaged property is not used principally for agricultural or farming purposes, and in which complaint the judgment creditor has expressly waived any right to a deficiency judgment, or (b) otherwise within one year after the date of the sale."

of foreclosure, coupled with failure to make payment upon the mortgage obligation within the said six month period, will be prima facie evidence of abandonment.

RCW 61.12.094 provides:

> When proceeding under RCW 61.12.093 through 61.12.095 no deficiency judgment shall be allowed. No mortgagee shall deprive any mortgagor, his successors in interest, or any redemptioner of redemption rights by default decree without alleging such intention in the complaint: PROVIDED, HOWEVER, That such complaint need not be served upon any person who acquired the status of such successor in interest or redemptioner after the recording of lis pendens in such foreclosure action.

And RCW 61.12.095 provides:

> RCW 61.12.093 and 61.12.094 shall not apply to property used primarily for agricultural purposes.

Generally, these statutes allow a finding of abandonment when the action is to foreclose on property improved by a structure or structures, RCW 61.12.093, proper notice has been given to the mortgagor, RCW 61.12.094, the mortgagee is willing to forgo a deficiency judgment, RCW 61.12.094, and the court finds that the mortgagor has neither occupied the premises nor paid the mortgage for 6 months or more. RCW 61.12.093. When property is sold pursuant to such a finding, the mortgagor's right of redemption is terminated. RCW 61.12.093.

Peculiarly, these statutes do not speak to who can seek a finding of abandonment or, as a consequence, to who can seek termination of the mortgagor's redemption rights. Thus, our function "is to effectuate the object and intent of the Legislature." *Ravsten v. Department of Labor & Indus.,* 108 Wn.2d 143, 150, 736 P.2d 265 (1987). Mutual says the Legislature intended to authorize the mortgagee, but not the purchaser at a sheriff's sale, to obtain a finding of abandonment. Demarest says the Legislature intended to authorize either the mortgagee or the purchaser to obtain such a finding.

We agree with Mutual for several reasons. First, RCW 61.12.093 states that a finding of abandonment must be

obtained in a mortgage foreclosure action. Generally, the mortgagee is a party to such an action, but the purchaser at a sheriff's sale is not. As a result, RCW 61.12.093 exhibits an intent to authorize the mortgagee, but not the purchaser, to obtain a finding of abandonment.

Second, RCW 61.12.094 states, in effect, that a finding of abandonment precludes a deficiency judgment. Only the mortgagee can waive a deficiency judgment, for it is he or she to whom the delinquent debt is owed. As a result, RCW 61.12.094 exhibits an intent to authorize the mortgagee, but not the purchaser,[20] to obtain a finding of abandonment.

Third, RCW 61.12.094 expressly states that a mortgagee cannot terminate a mortgagor's redemption rights unless he or she alleges an intent to do that in the complaint for foreclosure. The statute does not describe how anyone else should give notice, yet it is inconceivable that the Legislature intended to allow termination of the mortgagor's redemption rights without notice. Thus, the notice portion of RCW 61.12-.094 exhibits an intent to authorize the mortgagee, but not the purchaser, to obtain a finding of abandonment.

Fourth, to construe the statutes as Demarest urges would result in a windfall to the purchaser at a sheriff's sale. Property encumbered by redemption rights typically has less value than if unencumbered by such rights. The purchaser of such property bids and pays accordingly. If a purchaser could subsequently eliminate redemption rights, he or she could increase the value of the purchase, perhaps substantially, for no additional consideration. The result is a windfall to the purchaser, and nothing shows that the Legislature

---

[20]Parenthetically, there is no way a purchaser at a sheriff's sale could obtain a finding of abandonment without violating either a property right of the mortgagee or the intent of the Legislature. Necessarily, the purchaser would obtain a finding of abandonment that (1) does or (2) does not preclude a deficiency judgment. If the purchaser could obtain a finding that precludes a deficiency judgment, he or she could strip the mortgagee of a valuable property right. If the purchaser could obtain a finding that does not preclude a deficiency judgment, he or she could violate the Legislature's expressly declared intent that abandonment and consequent termination of redemption rights bar a deficiency judgment. *See* RCW 61.12.094 (first sentence).

intended to grant such a windfall.[21] On the contrary, we think the Legislature intended for the purchaser at a sheriff's sale to receive and hold the exact estate purchased — property subject to redemption rights, if that was the estate purchased, or property free of redemption rights, if that was the estate purchased.

Turning to this case, we hold that Demarest had no right to alter the nature of the property that he purchased, after he had purchased it. In other words, we hold that as the purchaser at a sheriff's sale, he had no right to obtain a finding of abandonment, or to eliminate the Roberts' redemption rights, regardless of whether the property had been "abandoned" for 6 months or more. It follows that the order of July 28 was erroneous, and that the trial court erred in refusing to set it aside.[22]

The remaining question concerns the relief to which Mutual is entitled on remand. Mutual argues that the period for redemption has been tolled since July 28, 1989, and must remain tolled until the mandate issues in this case. Further, it asserts that Demarest has been receiving rents pending appeal, and that he must now account for rents and profits in the manner provided by law.

■ Generally, we agree. The period for exercising the Roberts' redemption rights shall be deemed tolled from July 28, 1989, until the first date on which Mutual's right to redeem is effectively restored. If rents and profits have been received pending appeal, those must be accounted for in the manner provided by law.

---

[21]Moreover, as Mutual argues, the purchaser's windfall would come at the expense of the judgment debtor. Under the overall statutory scheme, the judgment debtor should receive either redemption rights or the benefit of an auction price that reflects property sold free of redemption rights. The judgment debtor would receive neither if a purchaser could eliminate redemption rights after the sheriff's sale.

[22]In reaching this result, we do not overlook Demarest's various other arguments, including that the Roberts voluntarily relinquished their redemption rights, and that the Roberts somehow participated with him in a way that nullifies the quitclaim deed they gave to Mutual. These arguments are meritless, and we elect not to discuss them.

In summary, we vacate the judgment entered June 14, 1991, except paragraph 4.[23] We vacate the ex parte order of July 28, 1989. Upon proper motion, the trial court shall cancel the sheriff's deed or take other appropriate steps to insure that Mutual's right to redeem is effectively restored.[24] As Roberts' successor in interest, Mutual is entitled to redeem the property within the time permitted by law, taking into account the tolling we have described above. Upon proper motion, the trial court shall require Demarest to account in the manner provided by law for rents and profits received while in possession of the property.

Reversed and remanded for further proceedings.

SEINFELD, A.C.J., and PETRICH, J. Pro Tem., concur.

Reconsideration denied January 11, 1994.

---

[23]Paragraph 4 of the judgment deals with matters not in issue on this appeal and not discussed in this opinion.

[24]Demarest, of course, is entitled to retain his certificate of sale, and to reapply for a sheriff's deed in the event redemption is not effected as provided by law.