[No. 24000-9-II. Division Two. July 7, 2000.]

Aubry D. Frazier, *Appellant*, v. The Department of Labor and Industries, *Respondent*.

412

Carol L. Casey (of *Casey & Casey, P.S.*), for appellant.

*Christine O. Gregoire, Attorney General,* and *Lisa A. Marsh, Assistant,* for respondent.

SEINFELD, J. — Aubry Frazier claims that the Department of Labor and Industries (Department) improperly reduced his disability benefits by the amount of social security retirement benefits that he had been receiving. He argues that because he received a lump sum disability payment rather than monthly benefits, he was not a person "receiving compensation" as RCW 51.32.225 uses that phrase and, thus, there was no statutory authorization for the deduction. We disagree with this contention and with Frazier's argument that the Department could not make the deduction without first adopting a rule that described the method of calculating the deduction. Finally, we conclude that the Board had the authority to find an overpayment. Thus, we affirm.

FACTS

In December 1982, Frazier sustained a workplace injury for which he received state workers' compensation benefits. In August 1988, Frazier turned 62 and began collecting federal social security retirement benefits. The Department closed Frazier's claim in November 1988.

Frazier petitioned the Department several times to reopen his workers' compensation claim. The Department did so in June 1993, with an effective date of August 1992. In

November 1993, the Department awarded Frazier time loss compensation (TLC) benefits for the period between August 1992 and August 1993. Later in November 1993, the Social Security Administration (SSA) informed the Department that Frazier was receiving social security retirement benefits.

In May 1994, Frazier filed a writ of mandamus to force the Department to act on his continued claims for compensation. On May 31, 1994, the Department issued an order indicating that it would pay further TLC benefits. But it also said that it would reduce the payments by $411 per month—the amount Frazier was receiving in social security retirement benefits—effective December 1993.

The next day, June 1, 1994, the Department issued a second order, which awarded Frazier TLC benefits from August 1993 to May 1994. The order provided that it would pay Frazier the full TLC rate for the period of August 1993 to November 1993, but would pay a reduced rate for the period from December 1993 to May 1994 because of the $411 monthly offset amount.

Frazier appealed to the Board, which affirmed the Department's order in part and reversed in part. It found that the Department correctly calculated the offset amount but that it (1) had failed to give Frazier adequate notice that the amount would be deducted and, therefore, (2) it must treat the offset as an overpayment. The Board remanded the matter to the Department requiring that it

> enter a further order paying the claimant's time loss compensation in full for the period from December 1, 1993 through May 31, 1994, establishing a time loss compensation overpayment for [that period] in the amount of $2,466.00 which is to be repaid through future benefits, pay any time loss compensation benefits payable for the month of June of 1994 at the full rate without any offset, and to thereafter pay any further time loss compensation owed to the claimant for the period from July 1, 1994 forward at a reduced rate consistent with an appropriate social security offset.

Frazier appealed the Board's order to the Kitsap County

Superior Court, which affirmed the Board's decision. He now appeals to this court, making the following four contentions: (1) at the time of the offset, he was not "receiving compensation" as RCW 51.32.225 uses that phrase; thus, the Department was not entitled to an offset; (2) because RCW 51.32.220 requires that the recipient receive notice of an offset a month in advance, the Department is not entitled to an offset against a payment for past amounts owing; (3) because the Department failed to adopt its methodology in calculating its offset as a rule, it may not take the offset; and (4) the Board lacked authority to determine that the offset was an "overpayment" that the Department could deduct from future benefits.

## I. "RECEIVING COMPENSATION"

Frazier's first argument turns on the wording of two sections of the Washington Industrial Insurance Act, Title 51 RCW. The first relevant statute, RCW 51.32.220, enacted in 1975, discusses the procedural requirements for taking an offset. It states, in pertinent part:

(1) For persons under the age of sixty-five receiving compensation for temporary or permanent total disability pursuant to the provisions of chapter 51.32 RCW, such compensation shall be reduced by an amount equal to the benefits payable under the federal old-age, survivors and disability insurance act as now or hereafter amended not to exceed the amount of the reduction established pursuant to 42 USC 424a. . . .

(2) Any reduction under subsection (1) of this section shall be effective the month following the month in which the department or self-insurer is notified by the federal social security administration that the person is receiving *disability benefits* under the federal old-age, survivors and disability insurance act: *PROVIDED*, That *in the event of an overpayment of benefits* the department or self-insurer may not recover more than the overpayments for the *six months* immediately preceding the date the department or self-insurer notifies the worker that an overpayment has occurred: *PROVIDED FURTHER*, That upon determining that there has been an overpayment, the department or self-insurer shall *immediately notify* the

person who received the overpayment that he or she shall be required to make repayment pursuant to this section and RCW 51.32.230.

(3) Recovery of any overpayment must be taken from *future . . . benefits* provided by this title. . . .

(4) No reduction may be made unless the worker *receives notice of the reduction* prior to the month in which the reduction is made.

RCW 51.32.220 (emphasis added).

Courts apply RCW 51.32.220 in conjunction with 42 U.S.C. § 424a, which Congress passed to coordinate the federal and state disability benefits that an injured worker may receive. 42 U.S.C. § 424a addresses "the problem of overlapping state and federal disability benefits." *Regnier v. Department of Labor & Indus.*, 110 Wn.2d 60, 62, 749 P.2d 1299 (1988). It allows the federal government to reduce an injured worker's social security disability benefits if the worker also receives state disability benefits. "It is the purpose of the statutory scheme to see that a disabled person is fully compensated for his disability, but not permitted to collect[] overlapping awards." *Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 149, 736 P.2d 265 (1987).

Federal law contains an exception to the general rule allowing the federal government to take the offset. 42 U.S.C. § 424a(d). The federal statute provides for a "reverse offset," whereby the State may reduce the amount of disability compensation it pays out if the worker is receiving social security disability benefits and if the state has a statute allowing for such an offset. "The effect of this provision is that it allows the state to shift costs to the federal government through its reverse offset program." *Harris v. Department of Labor & Indus.*, 120 Wn.2d 461, 469, 843 P.2d 1056 (1993). Washington enacted RCW 51.32.220 to take advantage of this exception. *Herzog v. Department of Labor & Indus.*, 40 Wn. App. 20, 22, 696 P.2d 1247 (1985).

The second relevant statute, RCW 51.32.225, was en-

acted in 1986. It allows the State to reduce disability payments for persons who receive federal social security *retirement* benefits. It provides, in pertinent part:

(1) For persons *receiving compensation* for temporary or permanent total disability under this title, the compensation shall be reduced by the department to allow an offset for social security *retirement benefits* payable under the federal social security, old age survivors, and disability insurance act, 42 U.S.C. . . .

(2) Reductions for social security retirement benefits under this section shall comply with the procedures in RCW 51.32.220 (1) through (6), *except those that relate to computation,* and with any other procedures established by the department to administer this section.

RCW 51.32.225 (emphasis added).

 Like RCW 51.32.220, a major factor behind the enactment of RCW 51.32.225 was to avoid duplication in benefits or "double dipping." *Harris*, 120 Wn.2d at 479. The *Harris* court held that both disability and retirement benefits are forms of wage-loss protection and that the termination of one of those sources of benefits is a rational way of avoiding duplicative benefits. 120 Wn.2d at 480.

In explaining its holding, the *Harris* court cited the leading workers' compensation treatise, as follows:

Wage loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. . . .

(Footnote omitted.) 4 A. Larson, *Workmen's Compensation* §97.10 (1990). We find Larson's analysis persuasive. State

disability benefits and federal old-age Social Security benefits serve the same purpose: to restore earnings due to wage loss. The cause of wage loss — whether it be old age, disability, or unemployment — is irrelevant. RCW 51.32.225 serves a legitimate purpose in avoiding duplication of benefits.

120 Wn.2d at 480. Because the Legislature had the same purpose in enacting both RCW 51.32.220 and .225—to avoid duplication of wage-loss benefits to injured workers—cases interpreting either of these statutes are instructive in interpreting the other.

Frazier's first argument turns on the interpretation of the phrase "receiving compensation" in RCW 51.32.225. He maintains that because he had not been receiving benefits from the Department on a monthly basis before he received the lump sum payment in June 1994, the plain language of the statute requires the Department to forgo any offset.

Construction of a statute is a legal question subject to de novo review. *Stuckey v. Department of Labor & Indus.*, 129 Wn.2d 289, 295, 916 P.2d 399 (1996). However, where the meaning of a statue is clear, the court must give effect to that meaning without regard to rules of statutory construction. *Allan v. Department of Labor & Indus.*, 66 Wn. App. 415, 418, 832 P.2d 489 (1992).

"The function of judicial interpretation of statutory enactments is to effectuate the object and intent of the Legislature." *Ravsten*, 108 Wn.2d at 150; *see also Herzog*, 40 Wn. App. at 25. The purpose of the statutory scheme at issue here is "to see that a disabled person is fully compensated for his disability, but not permitted to collect[] overlapping awards." *Ravsten*, 108 Wn.2d at 149; *see also Harris*, 120 Wn.2d at 471 (finding that because intent of 42 U.S.C. § 424a is to avoid duplication of benefits and RCW 51.32.225 also avoids duplicative benefits, it is consistent with federal policy). It is contrary to the "obvious intent of the controlling statutes" to allow a claimant to collect an award that amounts to a windfall. *Herzog*, 40 Wn. App. at 25.

■ ■ On appeal to this court, we treat the Board's

findings and decisions as prima facie correct; the burden of proof is on the party attacking them. RCW 51.52.115; *Ravsten*, 108 Wn.2d at 146. Here, Frazier has the burden to establish that the Board's findings are incorrect by a preponderance of the evidence. *Ravsten*, 108 Wn.2d at 146. In addition, on appeal from the superior court, the appellate court must ascertain whether substantial evidence in the record supports the findings of the trial court. *Ravsten*, 108 Wn.2d at 146.

Frazier relies on *Harris*, 120 Wn.2d 461, to support his argument that he was not "receiving compensation" when the Department took the retroactive offset and, therefore, the Department is not entitled to an offset. But the *Harris* court did not address the issue Frazier raises here.

The court in *Harris* also construed RCW 51.32.225, but focused on the exception to the general rule allowing an offset; this exception states that "[t]his reduction shall not apply to any worker who is receiving *permanent* total disability benefits prior to July 1, 1986." RCW 51.32.225(1) (emphasis added). The claimant in *Harris* received both social security benefits and state *temporary* total disability benefits prior to July 1, 1986. 120 Wn.2d at 465. About six weeks after that date, the Department issued an order reducing the claimant's disability payments by the amount of social security retirement benefits he had been receiving. *Harris*, 120 Wn.2d at 465.

On appeal, the claimant's widow argued for application of the exception to the offset provision, contending that the evidence showed that the claimant should have been receiving *permanent* total disability benefits prior to July 1, 1986. *Harris*, 120 Wn.2d at 472. The *Harris* court rejected that theory, stating:

> On its face, the statutory exception appears unambiguous. It simply makes an exception for those who are *receiving* permanent disability benefits as of a certain date. To receive is to "take possession or delivery of" something. *Webster's Third New International Dictionary* 1894 (1976). Jack Harris was not taking possession or delivery of permanent disability benefits

on July 1, 1986. He was only receiving temporary total disability payments on that date. He had not even requested a determination as to whether he was permanently disabled under RCW 51.32.055(2). Essentially, the petitioner would have us read the term "receive" to mean "subsequently determined eligible to receive". This would improperly stretch the language of the statute.

120 Wn.2d at 472.

█ In this case, in contrast to *Harris*, Frazier did in fact receive compensation in June 1994 when he "took possession or delivery of" the award for TLC benefits. He was a person "receiving compensation for temporary or permanent total disability under this title. . . ." RCW 51.32.225 (1); *see also Potter v. Department of Labor & Indus.*, 101 Wn. App. 399, 407, 3 P.3d 229 (2000).

██ The plain language of the statute does not support Frazier's argument that the phrase "receiving compensation" means that the claimant must currently be receiving *monthly* payments. *Potter*, at 403, 407. Further, Frazier's interpretation of the word "receiving" is contrary to the purpose of the statute, which is to fully compensate without allowing a windfall to the claimant. *Ravsten*, 108 Wn.2d at 149; *Herzog*, 40 Wn. App. at 25; *Potter*, at 409. Allowing Frazier to claim an exception to the offset rule because of a delay in his receipt of benefits would result not only in a windfall to him, it would also encourage others to use litigation to delay the physical delivery of benefits so as to reap the same windfall.

Because the meaning of the statute is clear, the trial court did not err in giving effect to that meaning. *Allan*, 66 Wn. App. at 418. Thus, Frazier has failed to show trial court error by a preponderance of the evidence.

## II. NOTICE REQUIREMENT FOR OFFSET

█ Frazier next argues that the Department waived its right to take an offset when it failed to notify him of its intent to do so during the month preceding the month provided for in the benefit check. Under RCW 51.32.220,

the statute instructing the Department to impose an offset, such a reduction is *effective* "the month following the month in which the department . . . is notified by the federal social security administration that the person is receiving disability benefits." RCW 51.32.220(2). Subsection (4) of this statute further provides that "[n]o reduction may be made unless the worker receives notice of the reduction prior to the month in which the reduction is made." RCW 51.32-.220(4). This prior notification requirement exists to permit the worker to object to a reduction in benefits by the Department, if disputed. *Ravsten*, 108 Wn.2d at 151.

In the instant case, the SSA notified the Department that Frazier was receiving social security retirement benefits in November 1993. Thus, effective December 1, 1993, the Department was entitled to take the offset, but only upon providing Frazier with notice of its intent to do so the month preceding the actual deduction.

Because the dating and mailing of notice on May 31, 1994, was not sufficient to give notice that same date, the Board properly found that Frazier did not receive notice of the offset until June 1994 and, thus, the Department was not entitled to an offset in June 1994. But the notice that Frazier received in June 1994 was adequate to allow the Department to take an offset after that date, pursuant to RCW 51.32.220(4). *See Potter*, at 410. Thus, the Board properly allowed the Department to reduce any benefits it might pay to Frazier after July 1, 1994, by the amount of social security benefits he had received after December 1, 1993, the date the Department became entitled to take the offset under RCW 51.32.220(2). Consequently, the trial court did not err when it affirmed the Board's decision on this issue.

### III. COMPUTATION RULE

Frazier next argues that the Department used an invalid method of computing its offset because the Department did not adopt the methodology as a rule in accordance with the Administrative Procedure Act's (APA) rule-making

provisions.[1] Frazier contends that the emphasized language of RCW 51.32.225(2)—"[r]eductions for social security retirement benefits under this section shall comply with the procedures in RCW 51.32.220(1) through (6), *except those that relate to computation . . .*" (emphasis added)—indicates that the Department must adopt its own rules for computing the offset. But the court in *Allan* rejected this argument, observing that under RCW 34.05.030, the Department is subject to the terms of the APA, except with respect to "adjudicative proceedings," judicial review, and civil enforcement. 66 Wn. App. at 421.

RCW 34.05.030(2)(c) states that the provisions of the APA shall not apply "[t]o the department of labor and industries where another statute expressly provides for review of adjudicative proceedings of a department action, order, decision, or award before the board of industrial insurance appeals". As the *Allan* court explained,

> Rulemaking by the Department is subject to the APA. Rulemaking is defined as "legislation on the administrative level, i.e., legislation within the confines of the granting statute, as required by the constitution and its doctrine of non-delegability and separability of powers." The test has also been articulated as the difference between making new laws and executing laws already in existence.
>
> Obviously, the calculation of the appropriate offset under RCW 51.32.220 does not constitute legislation. In this case, the Department applied existing law to a particular set of facts, giving rise to an order for which review was available by the Board pursuant to RCW 51.52.060,[2] which was an action exempted from the APA under RCW 34.05.030.

66 Wn. App. at 421 (citations omitted).

Here, as in *Allan*, the Department applied the existing

---

[1] Frazier does not take issue with the fact that the actual reduction amounted to a dollar-for-dollar offset, which appears to be consistent with the plain language of RCW 51.32.225(1) (a worker's state compensation "shall be reduced by the department to allow an offset for social security retirement benefits payable under . . . 42 U.S.C.").

[2] This statute governs appeals to the Board of Industrial Insurance Appeals.

law to the facts of Frazier's case, then issued an order for which review was available by the Board. Because RCW 34.05.030(2)(c) exempts the Department's adjudicative action in computing the offset amount from APA provisions, Frazier has failed to show that the trial court erred in affirming the Board's decision on this issue.

 Finally, Frazier's contention that the Department uses a computation different than a dollar-for-dollar offset in some cases is not properly before this court. The social security offset manual to which Frazier refers is not part of the record on review. Nor was it challenged below. Thus, we cannot properly consider this issue.

IV. ORDER OF "OVERPAYMENT"

Finally, Frazier argues that the Board's overpayment ruling was not before the Department and, thus, was beyond the Board's jurisdiction. He does not challenge the Board's conclusion that the Department's notice of the offset was not timely for a June offset; rather, he contends that the Board should not have ordered the Department to retrieve the offset by treating it as an overpayment and reducing the amount of any future benefits that the Department might owe to Frazier.

Frazier relies on *Hanquet v. Department of Labor & Industries*, 75 Wn. App. 657, 879 P.2d 326 (1994), to support his argument. In that case, the Department denied the claimant's request for coverage, finding that he was a sole proprietor at the time of the injury, rather than a "worker" under RCW 51.08.180. *Hanquet*, 75 Wn. App. at 660. RCW 51.12.020(5) specifically excludes sole proprietors from the mandatory coverage provisions of Title 51 RCW. Although on appeal, the Board found that the claimant was a "worker," it also denied coverage because the claimant's employment was "not in the course of the trade, business, or profession of his or her employer and [was] not in or about the private home of the employer." *See* RCW 51.12.020(3). *Hanquet*, 75 Wn. App. at 660-61. The Court of Appeals reversed, concluding that the Board exceeded its proper

scope of review when it denied the claim based upon a subsection of the statute that the Department had not addressed. *Hanquet*, 75 Wn. App. at 661.

 The facts here are distinguishable in that the Board based its decision upon an interpretation of the same statutes at issue before the Department. The Department found that it could appropriately take the offset from the lump sum payment made in June 1994 pursuant to RCW 51.32.220 and .225. On appeal, the Board looked to these statutes to determine if such an offset could indeed be made from the lump sum payment.

When the Board determined that Frazier could not have received the May 31, 1994, notice until some time in June, it concluded that the Department could not implement that offset until July 1, 1994, the month after the proper provision of notice, pursuant to RCW 51.32.220(4). The Board then observed that subsections (2) and (3) of this statute specifically provided for this circumstance. These subsections state that, in the event of an overpayment of benefits, the department (1) may recover only for overpayments for the previous six months, (2) must immediately notify the claimant of the overpayment and the intent to recover it, and (3) must recover an overpayment from future benefits. RCW 51.32.220(2), (3).

The Board concluded that the Department had made just such an overpayment because Frazier had received overlapping benefits from state disability compensation and social security retirement compensation from December 1993 forward. Because the Board looked to the statutes that were before the Department earlier, it did not err in ruling that the Department could recover the overpayment from future payments of benefits. Thus, the trial court did not err in affirming the Board's decision.

Accordingly, we affirm.

ARMSTRONG, C.J., and HOUGHTON, J., concur.